# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 No. CR 07-1164 JB

ROBERT L. HAMMONS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (I) the Plaintiff United States of America's Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed April 21, 2009 (Doc. 38)("Notice"); and (ii) the Defendant's Objection to Imposition of Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed August 28, 2009 (Doc. 47)("Defendant's Objection"). The Court held a sentencing hearing on January 4, 2010. The primary issues are: (I) whether Defendant Robert Hammons may collaterally attack the validity of his New Mexico conviction for aggravated assault against a household member with a deadly weapon; (ii) whether a New Mexico conviction for aggravated assault against a household member with a deadly weapon falls within the definition of "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)("ACCA"); and (iii) whether a New Mexico conviction for false imprisonment falls within the definition of "violent felony" under the ACCA. The Court finds that Hammons cannot collaterally attack his conviction for aggravated assault against a household member with a deadly weapon, and that New Mexico's aggravated assault and false-imprisonment

statutes each constitute "violent felonies" under the ACCA.  The Court will therefore overrule Hammons' objections.

## FACTUAL BACKGROUND

On June 13, 2007, the Grand Jury issued an Indictment charging Hammons with one count of felony possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  See Indictment, filed June 13, 2007 (Doc. 2).  Hammons' criminal record includes five past felony convictions for robbery, robbery and kidnaping, two counts of false imprisonment, and aggravated assault against a household member with a deadly weapon.  See Notice at 1-2.  On September 27, 1978, in the Linn County, Oregon Circuit Court, Hammons was found guilty of robbery in the first degree.  See Exhibit to Notice, Order at 1, filed April 21, 2009 (Doc. 38-2).  On December 18, 1981, the Honorable William W. Wells, Circuit Court Judge for the Oregon Circuit Court of Umatilla County, accepted Hammons' guilty plea for robbery in the first degree and kidnaping in the third degree.  See Exhibit to Notice, Judgment and Sentence Order 1, filed April 21, 2009 (Doc. 38-3).  On October 9, 2001, the Honorable Mark A. Macaron, District Judge for the Second Judicial District of New Mexico, accepted Hammons' no-contest plea to two counts of false imprisonment, committed on or about September 30, 2000 and October 1, 2000, respectively.  See Exhibit to Notice, Judgment, Sentence and Order Suspending Sentence at 1, filed April 21, 2009 (Doc. 38-1)("Sentence and Order Suspending Sentence").  Judge Macaron also accepted Hammons' no-contest plea to a charge of aggravated assault against a household member with a deadly weapon. See Sentence and Order Suspending Sentence at 1.

## PROCEDURAL BACKGROUND

On October 30, 2008, Hammons pled guilty to Count 1 of the two-count indictment charging

him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  See Notice at 1.  The United States filed a Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of U.S.C. §924(e) and U.S.S.G. § 4B1.4, stating its reliance on the alleged violent felony convictions to activate the enhanced penalty provisions of each section.  See Notice at 2.  Hammons objects to the imposition of an enhanced sentence.

1.     **Motions to Continue Sentencing and Habeas Corpus Rulings.**

On April 17, 2008, Hammons filed a pro-se petition for a writ of habeas corpus in the Second Judicial Court for Bernalillo County, arguing that his guilty plea in New Mexico state court was involuntary because he had ineffective assistance of counsel.  On April 25, 2008, his petition was denied.  Hammons then filed a petition for a writ of certiorari, which the Supreme Court of New Mexico denied in June 2008.  On July 31, 2008, Hammons filed a petition for writ of habeas corpus in United States District Court for the District of New Mexico.  See Hammons v. Williams, No. CIV 08-0716 MV/WDS, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed July 31, 2008 (Doc. 1).

On April 21, 2009, the United States filed its Notice to seek an enhanced sentence pursuant to the ACCA.  On June 19, 2009, Hammons filed an opposed motion to continue his sentencing hearing, arguing that a habeas petition challenging some of the convictions, upon which the United States' notice relies, was still pending before the Honorable Martha Vazquez, Chief United States District Judge for the District of New Mexico.  See Defendant's Opposed Motion to Continue Sentencing Hearing at 1, filed June 16, 2009 (Doc. 41).  Hammons argued to continue his sentencing, because, if the Court proceeded to sentencing and applied the ACCA enhancement, and if Judge Vazquez then found his prior convictions invalid, Hammons would have to request a new sentencing.  See Defendant's Opposed Motion to Continue Sentencing Hearing at 1.  The Court

granted his motion to continue.  See Order Continuing Sentencing Hearing, filed August 4, 2009 (Doc. 46).

On August 28, 2009, Hammons submitted the Defendant's Objection to the Imposition of an Enhanced Sentence Pursuant to the Armed Career Criminal Provision of 18 U.S.C. § 924(e) and U.S.S.G.§ 4B1.4.  Four days later, on September 1, 2009, Hammons filed an opposed motion to withdraw his guilty plea and his plea agreement, and to proceed to trial.  See Defendant's Opposed Motion to Withdraw his Guilty Plea and his Plea Agreement and to Proceed to Trial, filed September 1, 2009 (Doc. 50).

On October 10, 2009, Chief Judge Vazquez entered an order adopting the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD"),[1] dismissing Hammons' habeas petition for lack of jurisdiction -- because he was no longer in custody -- and for untimeliness.  See Hammons v. Williams, No. CIV 08-0716 MV/WDS, Order at 6, filed October 10, 2009 (Doc. 33)("October 10, 2009 Order").  Chief Judge Vazquez overruled Hammons' objection to the PFRD, in which Hammons argued that the circumstances of his case fell within an exception to the "in custody" requirement of 28 U.S.C. § 2254.  See October 10, 2009 Order at 2-5.

On November 13, 2009, the Court held a hearing on Hammons' opposed motion to withdraw his guilty plea and his plea agreement, and to proceed to trial.  Phillip P. Medrano, Hammons' attorney, argued that the motion to withdraw Hammons' guilty plea was not frivolous, that Hammons decided to file the motion because he wanted a jury to hear his defense,

_____

[1] On April 20, 2009, the Magistrate Judge recommended dismissal for lack of jurisdiction because Hammons was not "in custody" for the state convictions which were the subject of the federal habeas petition, and because the petition was time-barred as it was filed well over one year after Hammons' state court conviction became final.  See Hammons v. Williams, No. CIV 08-0716 MV/WDS, Magistrate Judge's Proposed Findings and Recommended Disposition at 3-5, filed April 20, 2009 (Doc. 31).

and that his defense would be actual innocence.  See Transcript of Hearing at 2:15-19 (taken November 13, 2009)(Medrano)("Nov. 13 Tr.").[2]

On December 2, 2009, Hammons filed an unopposed motion to withdraw his motion to withdraw his guilty plea.  See Defendant's Unopposed Motion to Withdraw His Previously Filed Motion to Withdraw His Guilty Plea, filed December 2, 2009 (Doc. 61).  On December 10, 2009, the Court granted the motion.  See Order at 1, filed December 10, 2009 (Doc. 63).

Hammons appealed Chief Judge Vazquez' decision denying his  habeas petition to the United States Court of Appeals for the Tenth Circuit.  Hammons argued that "he was innocent of the charges to which he pled guilty in state court, and that his involuntary plea was the result of ineffective assistance of his trial counsel."  Hammons v. Paskiewicz, No. 09-2284, 2010 WL 729044, at *1 (10th Cir. Mar. 4, 2010).  On March 4, 2010, the Tenth Circuit affirmed Judge Vazquez' decision.  See Hammons v. Paskiewicz, 2010 WL 729044, at *3.

**2.      Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.**

The United States contends that Hammons' convictions for robbery in 1978, robbery in the first degree and kidnaping in the third degree in 1981, and either the false imprisonment or the aggravated assault conviction in 2000, qualify Hammons for the ACCA's sentencing enhancement pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  Hammons contends that his New Mexico convictions for false imprisonment and aggravated assault against a household member with a deadly weapon are not violent felonies under the ACCA.  See Defendant's Objection at 1, 8. Hammons argues that neither the New Mexico offense of false imprisonment nor the offense of

---

[2] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

aggravated assault against a household member with a deadly weapon necessarily involve violent force or "conduct that presents a serious potential risk of physical injury" similar to the enumerated crimes, and the Court therefore should not consider these New Mexico convictions "violent felonies" for purposes of the ACCA or U.S.S.G. § 4B1.4. See Defendant's Objection at 8, 9.

At the hearing, Mr. Medrano argued that, although the Tenth Circuit held, in United States v. Zamora, 222 F. 3d 756 (10th Cir. 2000), cert. denied, 531 U.S. 1043 (2000), that the New Mexico offense of false imprisonment is a violent felony under the ACCA, the decision needs to be reexamined in light of Begay v. United States, 128 S. Ct. 1581 (2008). See Transcript of Hearing at 13:5-8 (taken January 4, 2010)(Medrano)("Jan. 4 Tr."). Additionally, Mr. Medrano contended that United States v. Zamora does not apply, because the Tenth Circuit's analysis dealt with U.S.S.G. § 4B1.1, the career-offender provision pursuant to the United States Sentencing Guidelines, and not the ACCA, which Mr. Medrano contended is more limited in scope. See Jan. 4 Tr. at 14:3-6 (Medrano). Although Mr. Medrano conceded assault is categorically a violent crime, he argued that Hammons' conviction for aggravated assault against a household member with a deadly weapon does not constitute a violent felony because a stun gun is not a deadly weapon. See Jan. 4 Tr. at 26:10-24 (Medrano).

Assistant United States Attorney David M. Walsh argued that the Court is bound by United States v. Zamora, and that even subsequent to the Supreme Court of the United States' ruling in Begay v. United States, Hammons' conviction for false imprisonment is a "violent felony" under the ACCA's residual clause. See Jan. 4 Tr. at 19:2-5 (Walsh). Additionally, Mr. Walsh argued that aggravated assault against a household member satisfies both prongs of the ACCA. See Jan. 4 Tr. at 17:4-17 (Walsh). He also argued that Hammons cannot collaterally attack his prior conviction for aggravated assault against a household member with a deadly weapon. See Jan. 4 Tr. at 18:18-

24 (Walsh).

On March 4, 2010, Hammons submitted a supplement to his objection.  See Supplemental Objection to Imposition of an Enhanced Sentence Pursuant to the Armed Career Criminal Provision of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed March 4, 2010 (Doc. 70)("Supplemental Objection").  In his Supplemental Objection, Hammons brings to the Court's attention recent Supreme Court authority that further defines "violent force" for purposes of the ACCA.  See Defendant's Supplemental Objection at 1.  Hammons contends that, under Johnson v. United States, 130 S. Ct. 1265 (2010), an offense is a "violent felony" under the ACCA only if it "require[s] a showing of violent force -- that is, force capable of causing physical pain or injury to another person."  Supplemental Objection at 3 (quoting Johnson v. United States, 130 S.Ct. at 1271 (internal citations omitted)).

On March 18, 2010, the United States filed a response to the Supplemental Objection.  See Response to Defendant's Supplemental Objection to Imposition of an Enhanced Sentence Pursuant to the Armed Career Criminal Provision of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed March 18, 2010 (Doc. 71)("Response to Supplemental Objection").  The United States asserts that Johnson v. United States does not disqualify Hammons' predicate convictions for false imprisonment and aggravated assault against a household member with a deadly weapon.  See Response to Supplemental Objection at 1.  The United States argues that Hammons' conviction of aggravated assault against a household member with a deadly weapon encompasses the physical force necessary under Johnson v. United States, because the act involved a deadly weapon.  See Response to Supplemental Objection at 2.  Alternatively, the United States contends that aggravated assault against a household member with a deadly weapon qualifies under the ACCA's residual clause because the conviction involves "purposeful, violent and aggressive conduct."  See Response to

Supplemental Objection at 2-3.  Additionally, the United States contends that, because the holding in  Johnson v. United States spoke only to the force clause and not the residual provision,[3] that case does not affect the qualification of Hammons' false imprisonment convictions.  See Response to Supplemental Objection at 3.

## SENTENCING ENHANCEMENTS FOR VIOLENT FELONIES AND CRIMES OF VIOLENCE

The United States Sentencing Guidelines provide for different sentence enhancements, depending on whether a crime constitutes a "crime of violence" or a "violent felony."  Although the definitions of the terms vary throughout the guidelines, case law interpreting the term "violent felony" is often persuasive to courts interpreting the term "crime of violence," and vice versa.  See United States v. Jackson, No. 05-8003, 2006 WL 991114, *2 (10th Cir. Apr. 16, 2006).  Courts must be precise when addressing objections to the application of particular sentencing enhancements, given violations of particular criminal statutes.  A court's "analysis must be attuned to the particular statute or guideline in question."  United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009).

The ACCA, which is codified at 18 U.S.C. § 924(e), imposes a mandatory minimum sentence for certain offenders with multiple criminal convictions and provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

_____

[3] The ACCA defines "violent felony" as: (I) a crime that has as an element the use, attempted use, or threatened use of physical force against the person of another; (ii) burglary, arson, extortion, or crimes involving the use of explosives; and (iii) a crime involving conduct that presents a serious potential risk of physical injury to another.  See 18 U.S.C. § 924(e)(2)(B).  The third class of crimes that constitute violent felonies is described as the residual provision.  See Chambers v. United States, 129 S. Ct. 687, 689 (2009).

18 U.S.C. § 924(e)(1).  The ACCA defines a "violent felony" as:

> (B) . . . any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
>> (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Pursuant to U.S.S.G. § 4B1.4, a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) is considered an armed career criminal and is subject to a mandatory minimum statutory sentence of fifteen years under the ACCA.  Section 4B1.4 provides in relevant part:

> (a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.
>
> (b) The offense level for an armed career criminal is the greatest of:
>
>> (1) the offense level applicable from Chapters Two and Three; or
>>
>> (2) the offense level from § 4B1.1 (Career Offender) if applicable; or
>>
>> (3)(A)  34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or
>>
>> (B)    33, otherwise.

U.S.S.G. § 4B1.4.

A defendant who is subject to an enhanced sentence under 18 U.S.C. §§ 924(c) or 929(a) is considered a career offender, and is subject to sentencing pursuant to U.S.S.G. §§ 4B1.1 and 4B1.2,

the career-offender provisions of the sentencing guidelines.  The Tenth Circuit has noted that the definition of "crime of violence" in these sections is nearly identical to the definition of "violent felony" in the ACCA, explaining:

> The [Sentencing] Commission promulgated its career offender provisions in section 4B1.1 and 4B1.2 pursuant to a mandate from Congress.  It originally defined "crime of violence" by reference to 18 U.S.C. § 16, but later replaced this definition with one patterned after § 924(e)(2)(B), . . . with one significant difference.  The Commission's definition conspicuously omitted burglary, with the single exception of "burglary of a dwelling."

United States v. Smith, 10 F.3d 724, 733 (10th Cir. 1993).  See U.S.S.G. § 4B1.1, cmt. backg'd (noting that § 4B1.1 is the guidelines' implementation of a Congressional directive and not a mandatory minimum sentencing statute).  Section 4B1.1 defines "crime of violence" by reference to U.S.S.G. § 4B1.2.  See U.S.S.G. § 4B1.1 cmt. application notes 1.  Section 4B1.2(a) defines "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2.

The Tenth Circuit has held that "[t]he definitions of 'crime of violence' under § 4B1.2(a) and 'violent felony' under the [ACCA] . . . are virtually identical."  United States v. Avalos, 315 F. App'x 731, 732 (10th Cir. 2009)(citation omitted).  "Thus, we often consider our "precedent under one of these provisions as guidance under the other provision in determining whether a conviction qualifies as a crime of violence."  United States v. Avalos, 315 F. App'x at 732 (citation omitted).

The Tenth Circuit explained the slight variation between the two guidelines provisions as follows:

> The language defining "violent felony" in 18 U.S.C. § 924(e)(1) is virtually identical to the guidelines language defining "crime of violence" under U.S.S.G. § 4B1.2(a). However . . . Application Note 1 of the commentary following § 4B1.2 defines crime of violence to include offenses that "by [their] nature [ ] present[ ] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a) cmt. n. 1. Unlike the ACCA and § 4B1.2(a), the Application Note definition is not directly preceded by an "or otherwise" clause. Application Note 1 therefore arguably supports a broader reading of § 4B1.2(a)'s scope.[4]

United States v. Rooks, 556 F.3d 1145, 1149-50 (10th Cir. 2009)(citing United States v. Begay, 470 F.3d 964, 978 n.1 (10th Cir. 2006)("[T]he Sentencing Commission's commentary to § 4B1.2(a)(2) . . . employs a broader interpretation . . . than is evident from the language of § 924(e).")(McConnell, J., dissenting in part)(citation omitted), rev'd, 553 U.S. 137 (2008))(alterations in original). Given the broader interpretation of the guidelines provision, the Tenth Circuit has held that some offenses qualify as crimes of violence under § 4B1.2 but not as violent felonies under the ACCA. See United States v. Martinez, 602 F.3d 1166, 1175 (10th Cir. 2010)(holding that the Arizona crime of attempted burglary is a "crime of violence" under § 4B1.2 but that it is not a "violent felony" under the ACCA). The Tenth Circuit explained:

> [W]e have looked to interpretations of the ACCA to guide our reading of § 4B1.2(a). But the definitions are not identical. The Sentencing Commission was not bound to

---

[4] The relevant portion of Application Note 1 is as follows:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

USSG, § 4B1.2 cmt. application note 1.

use for its purposes the ACCA definition of <u>violent felony</u>.  Indeed, it chose to use a different term--<u>crime of violence</u>, rather than <u>violent felony</u>.

602 F.3d at 1173 (citation omitted).

The Tenth Circuit has held that case law interpreting the ACCA's residual clause is persuasive in interpreting the § 4B1.2(a) residual clause.  <u>See</u>, <u>e.g.</u>, <u>United States. v. Patillar</u>, 595 F.3d 1138, 1140 (10th Cir. 2010)(holding "the definitions of [violent felony and crime of violence] are identically worded . . . .  Precedent interpreting the ACCA residual clause informs interpretation of the § 4B1.2(a) residual clause"); <u>United States v. Harris</u>, 329 F. App'x 202, 203 n.2 (10th Cir. 2009)(stating that "[<u>United States v.</u>]<u>Chambers</u> affects our analysis of what constitutes a crime of violence under U.S.S.G. § 4B1.2(a) because we have treated the ACCA and U.S.S.G. § 4B1.2(a) as largely co-ordinate"); <u>United States. v. Tiger</u>, 538 F.3d 1297, 1298 (10th Cir. 2008)("[T]he Court's reasoning in <u>Begay</u> applies equally to the sentencing guidelines . . . ."); <u>United States v. Archer</u>, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008)(noting that <u>Begay v. United States</u> is "instructive" in interpreting "crime of violence"); <u>United States v. Williams</u>, 537 F.3d 969, 971 (8th Cir. 2008)(holding that interpretations of the ACCA's "violent felony" are binding authority when interpreting U.S.S.G.'s "crime of violence").  "The definitions of 'violent felony' in the ACCA and 'crime of violence' in §§ 4B1.1(a) and .2 are nearly identical and generally interpreted as coextensive."  <u>United States v. Urbano</u>, No. 07-10160-01, 2008 WL 1995074, at *1 (D. Kan., May 6, 2008)(citation omitted).  "The language in the Guidelines and in the ACCA is sufficiently similar . . . that we have often noted that we engage in the same analysis for both inquiries."  <u>United States v. Martinez</u>, 2010 WL 2413022, at *3 n.2 (10th Cir. 2010)(citation omitted)(holding that Colorado's felony-menacing statute qualifies as a "violent felony" under the ACCA and referencing the categorical approach used in a case which interpreted the career-offender provisions of the

sentencing guidelines).   The Tenth Circuit has held that "the only difference between § 924(e)(2)(B)(ii)' s residual definition of a violent felony and USSG § 4B1.2(a)'s corresponding definition is that the latter lists 'burglary of a dwelling' rather than 'burglary' as an example of an offense that 'presents a serious potential risk of physical injury to another.'"   United States v. McConnell, 605 F.3d 822, 826 (10th Cir. 2010).   See United States v. Hernandez, 568 F.3d 827, 830 n.3 (10th Cir. 2009)(stating that, "[b]ecause of the similarity in language between the ACCA and the USSG, we have occasionally looked to precedent under one provision for guidance under another in determining whether a conviction qualifies as a violent felony")(citations omitted); United States v. Billups, 536 F.3d 574, 579 (7th Cir. 2008)(interpreting "the [ACCA and the residual clause of § 4B1.2(a)] as compelling the same result")(citation omitted); United States v. Brown, 514 F.3d 256, 268 (2d Cir. 2008)("[W]here the language of [the ACCA and the residual clause of § 4B1.2(a)] is identical, we cannot conclude that those provisions have disparate applicability to a type of conduct that inherently involves the risk specified in both provisions."); United States v. Rosas, 410 F.3d 332, 335-36 (7th Cir. 2005)("[T]he relevant language in the definition of 'violent felony' . . . is identical to the 'otherwise' clause of the definition of 'crime of violence' found in § 4B1.2" and that "there is no distinction between them.").   But see United States v. Templeton, 543 F.3d 378, 380 (7th Cir. 2008)(noting that "[p]erhaps Begay has broken the link between § 924(e) and § 4B1.2" as the career offender guideline, unlike the ACCA, "does not single out armed criminals," but then adding that it "would be inappropriate to treat identical texts differently just because of a different caption").

U.S.S.G. § 2L1.2, the sentencing enhancement for defendants convicted of unlawfully entering or remaining in the United States, includes a definition of "crime of violence," which the Tenth Circuit interprets more narrowly than the § 4B1.1 definition.   The Tenth Circuit explained:

> U.S.S.G. § 2L1.2 has a more narrow definition of "crime of violence" than the
> enhancement for career offenders . . . which defines a crime of violence in terms of
> a crime that has an element of force or "involves conduct that presents a serious
> potential risk of physical injury to another." U.S.S.G. § 2L1.2 does not provide for
> the latter alternative definition.

United States v. Ruiz-Rodriguez, 494 F.3d 1273, 1275-76 (10th Cir. 2007). The Tenth Circuit has

noted various other dissimilarities between § 924(e) and § 2L1.2(b), explaining:

> First, § 924(e)(2)(B)(ii) lists only four enumerated offenses . . . compared to the
> twelve enumerated offenses in § 2L1.2(b). Second, while § 924(e) has fewer
> enumerated offenses, when one includes the non-enumerated offenses conceivably
> covered by the statute, § 924(e)'s definition is much broader. Specifically, both
> provisions include felonies that have the use of force as an element of the offense.
> See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); 18 U.S.C. § 924(e)(2)(B)(I). However,
> § 924(e) also includes crimes that "otherwise involve [ ] conduct that presents a
> serious potential risk of physical injury to another". . . . [S]uch a crime is only an
> "aggravated felony" under the Guidelines, subject to an eight-level, not a
> sixteen-level, enhancement.

United States v. Rivera-Oros, 590 F.3d 1123, 1129 n.5 (10th Cir. 2009). Because the definition of

crime of violence in U.S.S.G. § 2L1.2 is narrower than that of the ACCA, cases interpreting

U.S.S.G. § 2L1.2 are persuasive in interpreting the ACCA.[5]

> While we have not definitively determined whether the amended § 2L1.2 definition
> is more comparable to either § 16 or § 4B1.2, we have recognized a distinction
> between the 'risk of physical injury,' under the § 4B1.2(a)(2) definition, and the risk

---

[5] Although cases interpreting U.S.S.G. § 2L1.2 may be persuasive in determining whether
an individual qualifies for a sentencing enhancement under the ACCA, the opposite may not be true:
cases interpreting the ACCA are not necessarily persuasive authority in interpreting U.S.S.G. §
2L1.2. In United States v. Ruiz-Rodriguez, the Tenth Circuit explained:

> [United States v.] James addresses how to assess whether a prior conviction was for
> conduct that presented "serious potential risk of physical injury to another" under 18
> U.S.C. § 924(e). See, e.g., 127 S. Ct. at 1597-98. . . . U.S.S.G § 2L1.2 does not
> define a crime of violence in the same way, and there is no indication that the
> Supreme Court intended [United States v.] James to apply to sentence enhancements
> under § 2L1.2.

United States v. Ruiz-Rodriguez, 494 F.3d at 1276 n.3.

> of 'physical force . . . in the course of committing the offense,' under the 18 U.S.C.
> § 16(b) definition, the latter of which we have said is less broad and requires
> 'destructive or violent force.'

United States v. Quijada, 146 F. App'x 958, 965 (10th Cir. 2005).  See United States v. Herrera, 286
F. App'x 546, 557 (10th Cir. 2008)(stating that, "[n]otably, 'crime of violence' is defined more
narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving
the use of force against property or acts that merely pose a risk of harm to another person")(quoting
United States v. Jaimes-Jaimes, 406 F.3d 845, 849 (7th Cir. 2005).

The Tenth Circuit has also considered the relationship of the ACCA's definition of "violent
felony" to the U.S.S.G.'s definition of "crime of violence" under U.S.S.G. § 2L1.2, finding that the
definition in § 2L1.2 is narrower than the definition of "violent felony" under the ACCA.  United
States v. Ruiz-Rodriguez, 494 F.3d at 1275-77 (holding that the Nebraska offense of false
imprisonment is not categorically a "crime of violence" under U.S.S.G. § 2L1.2 because it "does not
necessarily encompass an element of force"); United States v. Perez-Vargas, 414 F.3d 1282 at 1286-
87 (noting that Colorado's offense of third degree assault does not qualify as violent under U.S.S.G.
§ 2L1.2 because the language of the statute  "allows for other possibilities" besides "the use or
threatened use of physical force").  In United States v. Silva, 608 F.3d 663 (10th Cir. 2010), the
Tenth Circuit looked to U.S.S.G. § 2L1.2 in evaluating the New Mexico offense of aggravated
assault under the ACCA, explaining:

> We draw support . . . from a line of cases interpreting . . . § 2L1.2(b)(1)(A)(ii), which
> increases a defendant's offense level based on a prior conviction for a "crime of
> violence." . . . .  [A]n application note to that guideline provision defines "crime of
> violence" as "any of the following: . . . aggravated assault, . . . or any offense . . . that
> has as an element the use, attempted use, or threatened use of physical force against
> the person of another." . . .  Given "the similarity in language between the ACCA
> and USSG, we have occasionally looked to precedent under one provision for
> guidance under another in determining whether a conviction qualifies as a violent
> felony."

608 F.3d at 671.

## LAW REGARDING THE ACCA

The ACCA was designed to address the "special danger" that career offenders carrying guns pose.  <u>Begay v. United States</u>, 128 S. Ct. at 1582.  The ACCA imposes a minimum fifteen-year sentence for individuals who violate 18 U.S.C. § 922(g),[6] and have "three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  <u>See</u> <u>United States v. Sprous</u>, No. 09-6178, 2010 U.S. App. LEXIS 15689, at *4 (10th Cir. July 29, 2010)(stating that, "[u]nder the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a defendant who violates 18 U.S.C. § 922(g) and has 'three previous convictions . . . for a violent felony' is subject to a 15-year minimum sentence").

Whether a prior offense is a violent felony under the ACCA is a question of law.  <u>See</u> <u>Johnson v. United States</u>, 130 S. Ct. at 1268; <u>United States v. Martinez</u>, 602 F.3d 1166, 1168 (10th Cir. 2010).  The ACCA defines "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
> > (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  The ACCA defines three classes of crimes that constitute violent felonies:

(I) crimes that have as an element "the use, attempted use, or threatened use of physical force against

---

[6] 18 U.S.C. § 922(g) prohibits certain individuals, including convicted felons, from transporting or possessing firearms.

the person of another," id. § 924(e)(2)(B)(I); (ii) burglary, arson, extortion, or crimes involving the use of explosives, see id. § 924(e)(2)(B)(ii); and (iii) crimes not within the first two categories which involve "conduct that presents a serious risk of physical injury to another," id.  See Chambers v. United States, 129 S. Ct. 687, 689-90 (2009).

### 1.    Use, Attempted Use, or Threatened Use of Physical Force.

A crime is a violent felony if it is punishable by imprisonment for more than a year, and "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(I).

> Although the ACCA does not define "physical force," Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act."  Black's Law Dictionary (8th Ed. 2004).  Section 924(e)(2)(B)(I), moreover, includes not only the actual or attempted use of physical force against the person of another, but also the threatened use of such force.

United States v. Hernandez, 568 F.3d at 830 (footnote omitted).  See United States v. Herron, 432 F.3d 1127, 1137 (10th Cir. 2005)(stating that the defendant's convictions for having "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon" constituted violent felonies because this "conduct easily satisfies the requirement of 'the threatened use of physical force against the person of another'").

In determining whether a conviction is for a violent felony under § 924(e)(2)(B)(I), the court ordinarily applies a "categorical approach" under which the court looks "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction."  United States v. Scoville, 561 F.3d 1174, 1176 (10th Cir. 2009)(citation omitted).  See United States v. Silva, 608 F.3d at 668 (applying a categorical approach to determine whether a prior conviction qualifies as a violent felony under §

924(e)(2)(B)(I)).   All that is relevant is "'whether the elements of the offense are of the type that would justify its inclusion' within the ACCA"; the court does not "'inquir[e] into the specific conduct of this particular offender.'"  United States v. Scoville, 561 F.3d at 1176 (quoting James v. United States, 550 U.S. 192, 202 (2007)).  See Begay v. United States, 128 S. Ct. at 1585 ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Hernandez, 568 F.3d 827, 829 (10th Cir. 2009).

> In determining whether a conviction obtained under this statute is a "violent felony" within the meaning of § 4B1.2(a), we apply a formal categorical approach looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions.
>
> Applying this approach, it is clear a violation of Wyo. Stat. Ann. § 7-18- 112 is not a violent felony within the meaning of the guideline because . . . it is a crime of inaction and does not "involve[ ] conduct that presents a serious potential risk of physical injury to another."

United States v. Pappan, 315 F. App'x 677, 682 (10th Cir. 2009)(citations and footnotes omitted).

If a criminal statute proscribes both conduct that falls within the definition of violent felony and conduct that falls outside of it, the court uses a "modified categorical approach," under which the court may also look at the charging documents and the documents of conviction to determine whether the defendant was convicted of a violent felony.  United States v. Scoville, 561 F.3d at 1176; United States v. Avalos, 315 F. App'x at 732 ("[W]e employ the so-called 'modified categorical approach' when the statute of conviction encompasses both violent and nonviolent crimes.")  The Tenth Circuit clarified the proper use of the modified categorical approach in United States v. Herrera, stating: "[The modified categorical approach] is properly used when the underlying statute of conviction contains multiple element sets and is therefore divisible."  286 F.

App'x at 552.  See United States v. Silva, 608 F.3d at 668 (stating that the modified categorical approach involves consulting "charging documents and documents of conviction")(quoting United States v. Hernandez, 568 F.3d at 829).  In United States v. Hernandez, the Tenth Circuit analyzed whether Texas' crime of deadly conduct[7] is a violent felony under § 924(e)(2)(B)(I) of the ACCA. Because the defendant argued the Texas crime of deadly conduct was too broad to categorically constitute a violent felony, the Tenth Circuit applied a modified categorical approach, looking to the charging documents and documents of conviction to uncover the allegation that the defendant "knowingly discharged a firearm in the direction of an individual." United States v. Hernandez, 568 F.3d at 829-30.  The Tenth Circuit found that Hernandez' conduct had as an element "the use, attempted use, or threatened use of physical force against another person," and held that the charged crime was a "violent felony" under § 924(e)(2)(B)(I) of the ACCA.  United States v. Hernandez, 568

---

[7] Texas law defines the crime of deadly conduct, in pertinent part, as:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:

    (1) one or more individuals; or

    (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, vehicle is occupied.

(c) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

. . .

(e) An offense under Subsection (a) is a Class A misdemeanor. An offense under Subsection (b) is a felony of the third degree.

Tex. Penal Code Ann. § 22.05.

F.3d at 830.

In Johnson v. United States, the Supreme Court analyzed whether a defendant's prior battery conviction under Florida law was a "violent felony" under the ACCA.  Specifically, the Supreme Court inquired whether "actually and intentionally touching another person constitutes the use of 'physical force' within the meaning of § 924(e)(2)(B)(I)." 130 S. Ct. at 1269.  The Supreme Court noted that the ACCA does not define "physical force" and "therefore [gave] the phrase it's ordinary meaning," holding that the term physical force "means violent force -- i.e., force capable of causing physical pain or injury to another person."  130 S. Ct. at 1269-70 (emphasis in original).

In United States v. Herron, the Tenth Circuit held that Colorado's menacing statute[8] constituted a violent felony under use of force prong, and that "threatening or engaging in menacing conduct with a deadly weapon," such that a victim believes he or she is in danger of receiving an immediate battery, has as an element the threatened use of physical force against another person. United States v. Herron, 432 F.3d 1127, 1138 (10th Cir. 2005), cert. denied, 547 U.S. 1104 (2006).

_____

[8] Colorado defines menacing as:

A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.  Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

C.R.S.A. § 18-3-206 (2000).

The defendant argued that menacing was not a "violent felony," because the term deadly weapon[9] was defined so broadly as to include a fist, foot, or whiskey bottle, meaning that menacing includes conduct such as telling someone over the telephone that you are going to punch or kick them.  432 F.3d at 1138.  The Tenth Circuit stated: "Knowingly placing someone in fear . . . by the use of a deadly weapon certainly constitutes threatening someone," and "[a] threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon."  432 F.3d at 1138.

In United States v. Silva, the Tenth Circuit concluded that "'apprehension causing' aggravated assault . . . creates a commensurate threat of physical force" and likened said conviction to convictions under statutes that "criminalized intentional physical contact with a deadly weapon." 608 F.3d at 672.  The Tenth Circuit went on to note that the guideline provision defines "'crime of violence' as 'any of the following : . . . aggravated assault, . . . or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another.'" 608 F.3d at 671 (quoting U.S.S.G § 2L1.2 app. N.1(B)(iii)).  But see United States v. McFalls, 592 F.3d 707, 716 (6th Cir. 2010)(noting that, although comment 1 to U.S.S.G § 4B1.2 lists "aggravated

_____

[9] Colorado defines a deadly weapon as:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded; (II) A knife; (III) A bludgeon; or (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

C.R.S.A. § 18-1-901(3)(e) (1999).  New Mexico's aggravated assault statute does not define "deadly weapon."  The New Mexico Criminal Code's uniform definition defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . or any other weapons with which dangerous wounds can be inflicted."  N.M.S.A. 1978, § 30-1-12B (1963).

assault" as a crime of violence, South Carolina's crime of assault and battery of a high and aggravated nature was not categorically a crime of violence because it did not involve the same elements as generic aggravated assault)

    2.    **Enumerated Offenses.**

In <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the case in which the Supreme Court endorsed the "categorical approach," the question was whether the word "burglary" -- one of the ACCA's enumerated offenses -- required a "uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592.  The Supreme Court held that an offense constitutes "burglary" under § 924(e) if, regardless of its exact definition, it has the basic elements of a "generic" burglary -- i.e., an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime -- or if the charging paper and jury instructions required the jury to find all the elements of generic burglary to convict the defendant.  495 U.S. at 599.  The Supreme Court found that Congress used the word "burglary" in "the generic sense in which the term is now used in the criminal codes of most States."  495 U.S. at 589, 598 ("It seems to us implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction.").  The Supreme Court explained:

> The convicting State's definition of "burglary" cannot control the word's meaning under § 924(e), since that would allow sentence enhancement for identical conduct in different States to turn upon whether the particular States happened to call the conduct "burglary."  That result is not required by § 924(e)'s omission of a "burglary" definition contained in a prior version of the statute absent a clear indication that Congress intended by the deletion to abandon its general approach of using uniform categorical definitions for predicate offenses. "Burglary" in § 924(e) must have some uniform definition independent of the labels used by the various States' criminal codes.

495 U.S. at 575.  <u>See</u> <u>United States v. Silva</u>, 608 F.3d at 666 (applying the modified categorical approach "to determine 'the character of [Silva's] admitted burglary'")(citation omitted); <u>United</u>

States v. Terrell, 593 F.3d 1084, 1091 (9th Cir. 2010)(applying the categorical and modified categorical approaches "to compare [the defendant's] prior burglary offenses to the 'generic' definition of burglary set forth in Taylor"); United States v. Juarez-Galvan, 572 F.3d 1156, 1159 (10th Cir. 2009)(stating that it "must consider 'the uniform generic definition[s]' of [kidnaping and robbery, enumerated in § 2L1.2], and then determine whether the state statute[s] correspond[] to that generic definition").

### 3. **Similarity in Kind and Degree of Risk.**

If a crime does not have as an element the use, attempted use, or threatened use of physical force, and is not one of the enumerated offenses, it may still be a violent felony if it "presents a serious potential risk of physical injury to another" and therefore qualifies under the ACCA's "otherwise," or residual, clause. 18 U.S.C. § 924(e)(2)(B)(ii); Begay v. United States, 553 U.S. 137, 140, 144 (2008). The categorical approach governs whether a crime qualifies as a violent felony under the residual clause. See United States. v. Fell, 511 F.3d 1035, 1039-40 (10th Cir. 2007)(employing the categorical approach to determine that conspiracy to commit second-degree burglary under Colorado law is not a violent felony under the ACCA); James v. United States, 550 U.S. 192. "The sentencing court does 'not generally consider the particular facts disclosed by the record of conviction,' but rather 'whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.'" United States v. Coblentz, 274 F. App'x 651, 654 (10th Cir. 2008)(quoting James v. United States, 550 U.S. at 202). See United States v. Permenter, 969 F.2d 911, 914 (10th Cir. 1992)(stating that "[a]ny approach to the 'otherwise' clause other than purely categorical analysis would distort congressional intent"). In United States v. Harrison, 558 F.3d 1280, 1285 (11th Cir. 2009), the United States Court of Appeals for the Eleventh Circuit described the

categorical approach in residual clause cases:

> When the Supreme Court has determined whether a state crime not enumerated in
> § 924(e) satisfies the residual clause, it has explicitly looked to the particular state
> statute to supply the elements of the relevant crime . . . .  In other words, in residual
> clause cases, such as this, we pay attention to the way that the state statutory scheme
> identifies the relevant crime. Although we look at the state crime as it is "ordinarily
> committed," we focus on the elements of the state crime to determine the way in
> which it is ordinarily committed.

The Supreme Court recently decided <u>James v. United States</u>, 550 U.S. 192 (2007), in which
it held that a Florida attempted burglary offense could count as a predicate offense under the
ACCA's residual provision.  <u>See</u> 550 U.S. at 214.  The Supreme Court's decision focused on the
narrow question "whether attempted burglary, as defined by Florida law, falls within [the ACCA's]
residual provision for crimes that 'otherwise involv[e] conduct that presents a serious potential risk
of physical injury to another.'"  <u>James v. United States</u>, 550 U.S. at 195 (quoting 18 U.S.C.
§ 924(e)(2)(B)(ii)).  Florida law defined burglary as "entering or remaining in a structure or a
conveyance with the intent to commit an offense therein, unless the premises are at the time open
to the public or the defendant is licensed or invited to enter or remain."  550 U.S. at 195  (quoting
Fla. Stat. § 810.02(1) (1993)).  Under Florida law, "[a] person who attempts to commit an offense
prohibited by law and in such attempt does any act toward the commission of such offense, but fails
in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of
criminal attempt." 550 U.S. at 195.  The Supreme Court held that the categorical approach does not
"require[ ] that every conceivable factual offense covered by a statute must necessarily present a
serious potential risk of injury before the offense can be deemed a violent felony." 550 U.S. at 208.
The Supreme Court explained:

> [Section] 924(e)(2)(B)(ii)'s residual provision speaks in terms of a "potential risk."
> These are inherently probabilistic concepts.  Indeed, the combination of the two
> terms suggests that Congress intended to encompass possibilities even more

> contingent or remote than a simple "risk," much less a certainty. While there may
> be some attempted burglaries that do not present a serious potential risk of physical
> injury to another, the same is true of completed burglaries -- which are explicitly
> covered by the statutory language and provide a baseline against which to measure
> the degree of risk that a non-enumerated offense must "otherwise" present in order
> to qualify.

550 U.S. at 207.  See United States v. Whitson, 597 F.3d 1218 (11th Cir. 2010)(stating that "in

residual cases . . . we look to the language of the statute itself to discern an offense's elements and

to determine how it is 'generically' committed")(citation omitted); United States v. Dennis, 551 F.3d

986, 990 (10th Cir. 2008)(acknowledging that "the proper inquiry is whether the conduct

encompassed by the elements of the offense, in the ordinary case, presents a serious risk of injury

to another," but noting that " the focus must be on the elements")(quoting James v. United States,

550 U.S. at 208).

    In Chambers v. United States, the Supreme Court held that held that the Illinois offense of

failure-to-report did not qualify as a "violent felony" under the ACCA's residual clause, as it did not

involve conduct presenting a serious potential risk of physical injury to another.  See 129 S. Ct. at

691-93.  The Supreme Court found that the offense "amount[ed] to a form of inaction, a far cry from

the 'purposeful, 'violent,' and 'aggressive' conduct' potentially at issue when an offender uses

explosives against property, commits arson, burgles a dwelling or residence, or engages in certain

forms of extortion."  129 S. Ct. at 692.  The Supreme Court's analysis relied on a statistical analysis

of a research report prepared by the United States Sentencing Commission, which the Supreme

Court found "strongly support[ed] the intuitive belief that failure to report does not involve a serious

potential risk of physical injury." 129 S. Ct. at 692.

    The Supreme Court's recent decision in Begay v. United States narrowed the reach of the

ACCA's residual clause, specifying that the residual clause does not encompass all potentially risky

behavior.  See 553 U.S. at 148.  The Supreme Court acknowledged that the New Mexico offense of driving under the influence of alcohol presents a potential risk of injury, but found that the offense did not qualify as a violent felony under the ACCA.  See 553 U.S. at 148.  In United States v. West, the Tenth Circuit explained that Begay v. United States requires courts to consider:

> (1) whether the offense of conviction "presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and (2) whether the offense is "roughly similar, in kind as well as in degree of risk posed to the" offenses specifically enumerated in § 924(e)(2)(B)(ii) -- burglary, arson extortion or crimes involving explosives.

United States v. West, 550 F.3d 952, 960 (10th Cir. 2008)(quoting Begay v. United States, 553 U.S. at 148), overruled on other grounds by Chambers v. United States, 129 S. Ct. 687 (2009).  Begay v. United States did not, however, eliminate the ability of the court to consider the potential risk of physical injury during the offense.  See Chambers v. United States, 129 S. Ct. at 692 ("The question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'").  In fact, the potential risk of physical injury may be a factor when making this determination.  See Begay v United States, 553 U.S. at 1596 (Scalia, J., concurring)(asserting that treating serious risk of physical injury to another as critical factor).  The Supreme Court held that, to be similar in kind, "a predicate crime [must] involve 'purposeful, 'violent,' and 'aggressive' conduct.'"  Begay v. United States, 553 U.S. at 150 (citing James v. United States).  The Supreme Court noted that a violation of New Mexico's Driving Under the Influence of Intoxicating Liquor or Drugs statute was a strict liability offense, meaning that "the conduct for which the drunk driver is convicted need not be purposeful or deliberate."  553 U.S. at 144.  In concurrence, the Honorable Antonin G. Scalia, Associate Justice, noted that James v. United States "provides no answer, and suggests no approach to an answer, where . . . the predicate crime has no analog among the enumerated crimes,"  553 U.S. at 149-50

-26-

(Scalia, J., concurring in judgment), explaining:

> [The Supreme Court] concluded that to determine whether a predicate crime falls under the residual clause, a court should first identify the enumerated crime to which the predicate crime is most closely analogous and then decide whether the risk posed by the predicate crime is roughly equivalent to the risk posed by the enumerated crime. Because burglary was the enumerated crime most closely analogous to attempted burglary, and attempted burglary in the Court's judgment posed roughly the same risk of physical injury as burglary, attempted burglary qualified as a "violent felony" under § 924 (e). Unfortunately, the Court's approach in deciding that case provided no guidance for deciding future cases that involve predicate crimes other than attempted burglary, particularly those for which there are no clear analogs among the enumerated crimes.

Begay v. United States, 553 U.S. at 148 (Scalia, J., concurring in judgment). "The application of the Begay decision is hardly a simple proposition. Begay does not offer an expanded exposition upon what it means for a crime to be 'roughly similar in kind as well as in degree of risk posed' to the enumerated offenses." United States v. Charles, 667 F. Supp. 2d 1246, 1247 (D. Kan. 2009)(quoting Begay v United States, 553 U.S. at 143).

In United States v. West, the Tenth Circuit analyzed the Utah offense of failing to stop at an officer's command. Applying the first prong of the test in Begay v. United States, the Tenth Circuit held that the offense presents a serious potential risk of physical injury to another because it "always involve[s] the use of a motor vehicle," and "will likely occur in the presence of innocent and unsuspecting bystanders." United States v. West, 550 F.3d at 960. The Tenth Circuit noted that "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." 550 F.3d at 963 (internal citations omitted). The Tenth Circuit held that "the crime at issue is sufficiently similar to the offenses enumerated in § 924(e)(2)(B)(ii) if it 'typically involves purposeful, violent, and aggressive conduct.'" 550 F.3d at 966-67 (emphasis added).

In United States v. Zuniga, the Tenth Circuit analyzed Zuniga's conviction for possession

of a deadly weapon in a penal institution, under Tex. Penal Code Ann. § 46.10,[10] and determined that it was a "violent felony" pursuant to the ACCA.  United States v. Zuniga, 553 F.3d at 1336.  The Tenth Circuit held that the offense presented a serious potential risk of physical injury for two reasons.  First, the act "requires carrying, possessing, or concealing something manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury" 553 F.3d at 1334.  Second, "by its nature . . . the possession of a deadly weapon by a prison inmate presents a serious potential risk of physical injury to another."  553 F.3d at 1335.  The Tenth Circuit rejected the defendant's argument that "any offenses included in the residual clause . . . must be exclusively characterized as involving acts of violence against a person," and found that possession of a deadly weapon in a penal institution was a crime that typically involved purposeful, violent, and aggressive conduct.  553 F.3d at 1335.  The Tenth Circuit reasoned that, although an offense may not be "exclusively characterized as involving acts of violence against a person," it " is violent if it creates a likelihood of violence."   553 F.3d at 1335 (emphasis added).  See United States v. Atkins, No. 09-8072, 2010 WL 2073594, at *2 (10th Cir. May 24, 2010)(holding that the Colorado crime of attempted vehicular eluding constitutes crime of violence).  Additionally, in United States v.

_____

[10] Under Texas law:

(a) A person commits an offense if, while confined in a penal institution, he intentionally, knowingly, or recklessly: (1) carries on or about his person a deadly weapon; or (2) possesses or conceals a deadly weapon in the penal institution. . . .

. . . .

(d) An offense under this section is a felony of the third degree.

Tex. Penal Code Ann. § 46.10.

Zuniga, the Tenth Circuit stated: "We consider it unlikely that any conduct properly characterized as 'violent' could not also be characterized as 'aggressive.'"  553 F.3d at 1335.  See, e.g., United States v. West, 550 F.3d at 969 ( "There is little doubt that knowingly flaunting the order of a police officer is aggressive conduct.").

In United States v. Billups, 536 F.3d 574, 579 (7th Cir. 2008), the United States Court of Appeals for the Seventh Circuit held that the Wisconsin offense of false imprisonment is a crime of violence under U.S.S.G. § 4B1.2 because the Wisconsin statute criminalized "intentionally confin[ing] or restrain[ing] another without the person's consent and with knowledge that he or she had no lawful authority to do so." 536 F.3d at 577 (emphasis added)(citing Wis. Stat. Ann. §940.30 (2001)).  The Seventh Circuit stated that the conduct encompassed by the elements of Wisconsin's false-imprisonment offense, in the ordinary case, presented a serious potential risk of injury to another, after finding that the "potential for violent confrontation is obvious and significant, because a non-consenting victim is, by definition, one who resists confinement." United States v. Billups, 536 F.3d at 580-81 (citation omitted).  See United States v. Gray, 535 F.3d at 130 (2d Cir. 2008)(holding that "Begay places a strong emphasis on intentional-purposeful-conduct as a prerequisite for a crime to be considered similar in kind to the listed crimes").

## LAW REGARDING COLLATERALLY ATTACKING A PRIOR CONVICTION

In a collateral attack on a final judgment of conviction, there is a presumption that the conviction is constitutionally valid. See Parke v. Raley, 506 U.S. 20, 30-31 (1992).  As the Supreme Court has stated, an alternate presumption requiring affirmative proof would "improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights."  506 U.S. at 30. Accordingly, in applying the ACCA, the Tenth Circuit has stated that, "once the government has

established the fact of a prior conviction based on a guilty plea, the defendant has the entire burden of providing the invalidity of the conviction." United States v. Wicks, 995 F.2d 964, 978 (10th Cir. 1993).

In Custis v. United States, 511 U.S. 485 (1994), the Supreme Court determined whether a defendant in a federal sentencing proceeding could collaterally attack the validity of previous state convictions that are used as sentence enhancements under the ACCA.  The Supreme Court held that "a defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." Custis v. United States, 511 U.S. at 487. Relying on language in the ACCA, the Supreme Court stated:

> Congress did not intend to permit collateral attacks on prior convictions under § 924(e).  The statute's language . . . focuses on the fact of the conviction, and nothing therein suggests that the prior final conviction may be subject to attack for potential constitutional errors before it may be counted.  [This] is strongly supported by § 921(a)(20), which provides that a court may not count a conviction "which has been . . . set aside" by the jurisdiction in which the proceedings were held, and thereby creates a clear negative implication that courts may count a conviction that has not been so set aside; by the contrast between § 924(e) and other related statutes that expressly permit repeat offenders to challenge prior convictions that are used for enhancement purpose.

Custis v. United States, 511 U.S. at 485-86.

In United States v. Garcia, 42 F.3d 573 (10th Cir. 1994), the Tenth Circuit highlighted the two policy bases for the decision in Custis v. United States, stating: "First . . . allowing a defendant to collaterally attack predicate convictions would delay proceedings and erode confidence in judicial institutions." United States v. Garcia, 42 F.3d at 581.  "Second . . . it would not be appropriate for a district court to review a state court judgment, except in the habeas corpus context." 42 F.3d at 581.

In United States v. Silva, the Tenth Circuit rejected the defendant's argument that his prior

aggravated assault conviction did not constitute intentional conduct under the ACCA, finding that defendant's prior plea of no contest "was an admission of intentional conduct."  United States v. Silva, 608 F.3d at 673.

### ANALYSIS

Hammons does not dispute that two of his previous convictions -- for the Oregon offenses of: (I) robbery and robbery in the first degree; and (ii) kidnaping in the third degree -- qualify as predicate offenses for the purposes of the ACCA enhancement.  The United States contends that two of Hammons' other convictions -- his New Mexico convictions for false imprisonment and for aggravated assault against a household member -- also qualify as violent felonies under the ACCA and make him eligible for the sentencing enhancement under U.S.S.G. § 4B1.4.  Because Hammons has two uncontested predicate offenses, the Court needs to determine only whether one of the two convictions the United States argues are violent felonies under the ACCA.  Hammons argues that neither his New Mexico conviction of false imprisonment nor his New Mexico conviction for aggravated assault against a household member constitute "violent felonies."  He further argues that his prior conviction for aggravated assault against a household member with a deadly weapon is not a "violent felony," because it lacks the requisite physical force, and because a stun gun is not a deadly weapon.  The Court finds that Hammons may not collaterally attack his prior conviction for aggravated assault against a household member with a deadly weapon. The Court also finds that New Mexico's crime of aggravated assault against a household member with a deadly weapon is a violent felony under the force clause of the ACCA.  The Court further finds that New Mexico's crime of false imprisonment is a violent felony under the residual clause of the ACCA.  The Court will overrule the objection to applying § 4B1.4.

I.     **HAMMONS CANNOT COLLATERALLY ATTACK THE VALIDITY OF HIS NEW MEXICO CONVICTION FOR AGGRAVATED ASSAULT AGAINST A HOUSEHOLD MEMBER WITH A DEADLY WEAPON.**

Hammons contends that his prior aggravated assault conviction does not constitute a violent felony under the ACCA because there were no allegations that he used the stun gun in a manner that would qualify it as a deadly weapon. See Defendant's Objection at 10-11. Because Hammons pled no contest to aggravated assault against a household member in 2001, he may not collaterally attack his conviction at sentencing. See United States v. Silva, 608 F.3d at 673 (rejecting argument that prior aggravated assault conviction did not constitute intentional conduct under the ACCA because defendant had pled no contest to aggravated assault).

In Custis v. United States, the Supreme Court examined whether the ACCA should be read to permit defendants to challenge the constitutionality of convictions used for sentencing purposes. Custis v. United States, 511 U.S. at 487. The United States sought to enhance the defendant's sentence pursuant to the ACCA. See Custis v. United States, 511 U.S. at 488. The defendant challenged two of his prior Maryland convictions, arguing ineffective assistance of counsel. See Custis v. United States, 511 U.S. at 488. The Supreme Court held that "a defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." Custis v. United States, 511 U.S. at 487. The Supreme Court further explained: "Looking to the language of the statute, we do not believe § 924(e) authorizes such collateral attacks." Custis v. United States, 511 U.S. at 490.

As in Custis v. United States, the pleadings in the present case contain no information indicating that Hammons' aggravated assault against a household member with a deadly weapon was obtained in violation of his right to counsel. Accordingly, the Court cannot reexamine his prior conviction by considering whether a stun gun should be considered a deadly weapon, and a

collateral attack is impermissible.

II.    **NEW MEXICO'S AGGRAVATED ASSAULT STATUTE CONSTITUTES A VIOLENT FELONY UNDER THE ACCA.**

The Court applies a categorical approach to determine whether a prior conviction for the New Mexico offense of aggravated assault qualifies as a violent felony under the ACCA, as the statute does not proscribe a range of conduct that is broader than the ACCA's definition of violent felony. United States v. Hernandez, 568 F.3d at 829. "That is, [the Court] considers whether the elements of the offense are of the type that would justify inclusion within the ACCA, without inquiring into the specific conduct of this particular offender." United States v. Hernandez, 568 F.3d at 829. See United States v. Taylor, 495 U.S. at 578. New Mexico's crime of aggravated assault offense is defined as:

> (1) unlawfully assaulting or striking at a household member with a deadly weapon; or
>
> (2) willfully and intentionally assaulting a household member with intent to commit any felony.

NMSA 1978, § 30-3-13.

Hammons contends that New Mexico's offense of aggravated assault against a household member with a deadly weapon is not categorically a violent felony because it does not include "as an element the use, attempted use, or threatened use of physical force against the person of another" Defendant's Objection at 8-10. He also argues that it does not present a "serious potential risk of physical injury." Defendant's Objection at 10. Hammons argues that a "person can unintentionally engage in conduct causing a household member to believe that she is in danger of receiving a battery while in possession of a stun gun." Defendant's Objection at 9. The Tenth Circuit has found, however, that "threatening or engaging in menacing conduct with a deadly weapon," such that a

victim believes he or she is in danger of receiving an immediate battery, has as an element the threatened use of physical force against another person.  United States v. Herron, 432 F.3d at 1138 (holding that Colorado's menacing statute "easily satisfies the requirement . . . under the ACCA"), cert. denied, 547 U.S. 1104 (2006).  In United States v. Herron, the defendant argued that menacing was not a "violent felony" because the term deadly weapon was defined so broadly as to include a fist, foot, or whiskey bottle, meaning that menacing includes conduct such as telling someone over the telephone that you are going to punch or kick them.  432 F.3d at 1138.  The Tenth Circuit stated that: "[k]nowingly placing someone in fear . . . by the use of a deadly weapon certainly constitutes threatening someone," and "[a] threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon."  United States v. Herron, 432 F.3d at 1138.

In Johnson v. United States, the Supreme Court found that "the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person," and held that a battery conviction under Florida law did not qualify as a violent felony under the ACCA.  Johnson v. United States, 130 S. Ct. at 1271, 1273.  On this basis, Hammons contends New Mexico's offense of aggravated assault against a household member is not a "violent felony," because the offense does not require a showing of "violent force -- that is capable of causing physical pain or injury to another person."  Defendant's Supplemental Objection at 3 (quoting Johnson v. United States, 130 S.Ct. at 1271 (internal citations omitted)).  In Johnson v. United States, however, the Supreme Court analyzed whether "actually and intentionally touching another person constitutes the use of 'physical force' within the meaning of § 924(e)(2)(B)(I)." 130 S. Ct. at 1269.  Johnson v. United States is distinguishable from United States v. Herron in that the Tenth Circuit in United States v. Herron, analyzed "threatened use of physical force against another

person," 18 U.S.C. § 924(e)(2)(B)(I) (emphasis added), while <u>Johnson v. United States</u> analyzed the "<u>use</u> of physical force," <u>id.</u> § 924(e)(2)(B)(I) (emphasis added).  Furthermore, in <u>United States v. Martinez</u>, No. 09-1328, 2010 WL 2413022 (10th Cir. June 16, 2010), the Tenth Circuit held that Colorado's felony menacing offense is "categorically a violent felony under the 'as an element' definition of a violent felony," even after <u>United States v. Johnson</u>.  <u>United States v. Martinez</u>, 2010 WL 2413022, at *3.  <u>See</u> <u>also</u> <u>United States v. Sprous</u>, 2010 WL 2982913, at *2 (10th Cir. 2010)("There is no question that Missouri second-degree assault [is a] violent felon[y].")

The plain language of the statute, requiring proof of the "assaulting or striking at a household member with a deadly weapon," has as an element "the use, attempted use, or threatened use of physical force against another person."  NMSA 1978, § 30-3-13 (1995).  New Mexico law provides that aggravated assault also may be committed if a "defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery."  <u>State v. Bachicha</u>, 111 N.M. 601, 607, 808 P.2d 51, 54 (Ct. App. 1991).  Conduct satisfying the elements of the offense constitutes, at a minimum, "the threat of such force against another's person."  <u>United States v. Herron</u>, 432 F.3d at 1137.

Hammons' contention that his conviction for aggravated assault is not a violent felony under the ACCA is also contravened by the Tenth Circuit's holding in <u>United States v. Silva</u>.  The Tenth Circuit provides a clarifying precedent in the wake of <u>United States v. Johnson</u>, explicitly stating that "apprehension causing" aggravated assault, the second theory under which the offense may occur, constitutes a violent felony, as it threatens the use of "violent force."  <u>United States v. Silva</u>, 608 F.3d at 670.  The Tenth Circuit explained: "By committing such an act, the aggressor communicates to his victim that he will potentially use 'violent force' against the victim in the near-future.  Additionally, 'apprehension causing' aggravated assault threatens the use of ' violent force' because

the proscribed conduct always has the potential to lead to 'violent force.'" United States v. Silva, 608

F.3d at 670.  The Tenth Circuit concluded that "'apprehension causing' aggravated assault . . . creates

a commensurate threat of physical force" with statutes that "criminalized intentional physical contact

with a deadly weapon," and went on to note that U.S.S.G. § 2L1.2 includes "aggravated assault"

under the definition of "crime of violence."   608 F.3d at 672 (quoting U.S.S.G § 2L1.2 app.

N.1(B)(iii)).  See United States v. Torres-Ruiz, 387 F.3d 1179, 1181 (10th Cir. 2004)(stating that the

commentary to the guidelines "is authoritative unless it violates the Constitution or a federal statute,

or is inconsistent with, or a plainly erroneous reading of, that guideline").

Hammons pled no contest and, partially because of his possession of a deadly weapon during

the commission of the crime, was convicted under NMSA 1978, § 30-3-2(A)(1).[11]  The ACCA

"focuses upon the special danger created when a particular type of offender -- a violent criminal or

drug trafficker -- possesses a gun."  Begay v. United States, 553 U.S. at 146.  In Begay v. United

States, the Supreme Court held that, when evaluating past crimes as "violent felonies" under the

ACCA, it is important to consider the "kind or degree of danger the offender would pose were he to

possess a gun."  553 U.S. at 146.  Committing an assault with a deadly weapon connotes violent

physical force.  See United States v. Pulliam, 566 F.3d 784, 788 (8th Cir. 2009)(stating that "[i]t goes

without saying that displaying an operational weapon before another in an angry or threatening

manner qualifies as threatened use of physical force against another person").  Hammons pled no

---

[11] Additionally, in its consideration of Hammons' appeal of the district court's denial of his petition for a writ of habeas corpus in  Hammons v. Paskiewicz, No. 09-2284, 2010 WL 729044 (10th. Cir. March 4, 2010), the Tenth Circuit noted in dicta: "Pursuant to the Armed Career Criminal Act, Mr. Hammons is subject to a mandatory fifteen-year sentence, because of his underlying convictions for false imprisonment and aggravated assault."  2010 WL 729044, at *7.

contest and was convicted of aggravated assault against a household member with a deadly weapon.[12]
Moreover, at his sentencing hearing, Hammons conceded that assault is categorically a violent crime.
See Jan. 4 Tr. at 26:10-24 (Medrano).  The Court finds that Hammons' conviction for aggravated
assault constitutes a violent felony under the ACCA because the crime has "as an element the use,
attempted use, or threatened use of physical force against the person of another."  18 U.S.C.
§ 924(e)(2)(B)(ii).  Because his aggravated assault conviction constitutes the third of three previous
convictions for a violent felony or a serious drug offense, Hammons qualifies for the ACCA's
sentencing enhancement if the first two qualify.  See id. § 924(e)(1).

### III.   HAMMONS' FALSE IMPRISONMENT CONVICTION CONSTITUTES A VIOLENT FELONY AND WILL ALSO TRIGGER THE ACCA.

New Mexico defines the crime of false imprisonment as "intentionally confining or
restraining another person without his consent and with knowledge that he has not lawful authority
to do so."  NMSA 1978, § 30-4-3.  The restraint of a person "may arise out of words, acts, gestures,
or similar means which induce reasonable apprehension that force will be used if the plaintiff does
not submit and it is sufficient if they operate upon the will of the person threatened and result in
reasonable fear of personal difficulty or personal injuries."  Mendoza v. Kmart, Inc, 587 F.2d 1052,
1058 (10th Cir. 1978)(citing Martinez v. Sears Roebuck and Co., 81 N.M. 371, 467 P.2d 37 (Ct. App.
1970))

Hammons argues that New Mexico's false imprisonment is not roughly similar to the offenses

---

[12] As noted, New Mexico defines aggravated assault as: (I) unlawfully assaulting or striking
at a household member with a deadly weapon; or (ii) willfully and intentionally assaulting a
household member with intent to commit any felony.  See NMSA 1978, § 30-3-13(A).  Because
Hammons was convicted of aggravated assault against a household member with a deadly weapon
pursuant to his no contest plea, see Sentence and Order Suspending Sentence at 1, the Court need
not evaluate NMSA 1978, § 30-3-13 (A)(2).

specifically enumerated in § 924(e)(2)(B)(ii) -- burglary, arson, extortion, or crimes involving explosives -- and is therefore not a "violent felony" under the second prong of the test from Begay v. United States.   Defendant's Objection at 8, 9.   The Court applies a categorical approach to determine whether Hammons' false-imprisonment conviction qualifies as a violent felony under the ACCA, given that New Mexico's offense of false imprisonment does not proscribe a range of conduct that is broader than the ACCA's definition.[13]   See United States v. Hernandez, 568 F.3d at 829; United States v. Taylor, 495 U.S. at 578.

In United States v. Zamora, the Tenth Circuit determined that New Mexico's crime of false imprisonment "was a crime of violence for purposes of sentencing the defendant as a career defendant pursuant to U.S.S.G. § 4B1.1."[14]   United States v. Zamora, 222 F.3d 756.   The Tenth Circuit found that false imprisonment, like other crimes for which lack of victim consent is an element of the offense, is a crime of violence despite the fact that it does not require proof of physical force as an element.   See United States v. Zamora, 222 F.3d at 764.   The Tenth Circuit noted: "[I]t is not necessary to show actual physical force; instead, it is enough to show that there is a substantial risk of physical injury."   United States v. Zamora, 222 F.3d at 765.   The Tenth Circuit reasoned that the offense entails "a substantial risk of physical force being used," because it "involves non-consensual acts on another person."   United States v. Zamora, 222 F.3d at 764.   In United States v.

_____

[13] New Mexico defines the crime of false imprisonment as "intentionally confining or restraining another person without his consent and with knowledge that he has not lawful authority to do so."   NMSA 1978, § 30-4-3.

[14] Because the Tenth Circuit has often considered case law interpreting the U.S.S.G. § 4B1.1 to provide persuasive interpretations of the ACCA, the holding in United States v. Zamora is instructive.   See, e.g., United States v. West, 550 F.3d 952, 960 (listing cases), overruled on other grounds by Chambers v. United States, 129 S. Ct. 687; United States. v. Tiger, 538 F.3d 1297, 1298.

Billups, the United States Court of Appeals for the Seventh Circuit noted: "[T]he 'serious potential risk' language of the residual clause . . . is indicative of probability, rather than inevitability; therefore, an offense need not pose a serious risk of harm in every conceivable factual manifestation in order to constitute a crime of violence." United States v. Billups, 536 F.3d at 574 (holding that, under Begay v. United States, the Wisconsin offense of false imprisonment qualified as crime of violence under § 4B1.1 and § 4B1.2, the career-offender sentencing guidelines)(citing United States v. Vanhook, 510 F.3d 569, 575 (6th Cir. 2007)). See James v. United States, 550 U.S. at 207 (noting that "potential" and "risk" are "inherently probabilistic concepts," and explaining "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another"); United States v. Templeton, 543 F.3d at 382 (citing data representing a rate of injury between 1.6 and 8 percent to find that prison escapes "generate a sufficient risk of injury to count as crimes of violence").

        New Mexico cases demonstrate the substantial risk of physical injury false imprisonment poses. See, e.g., State v. Singleton, 130 N.M. 583, 589-90, 28 P.3d 1124, 1130-31 (Ct. App. 2001)(upholding conviction of false imprisonment where the victim testified that she wanted to leave to call the police but did not because the defendant threatened to stab her with a screwdriver if she did); State v. Ibarra, 116 N.M. 486, 490-91, 864 P.2d 302, 306-07 (Ct. App. 1993)(finding that false imprisonment existed when the defendants beat the residents of the house, threw them in a closet, and later tied them to the bed when they tried to escape); State v. Corneau, 109 N.M. 81, 86, 781 P.2d 1159, 1164 (Ct. App. 1992)(finding evidence to support false imprisonment where the victim asked to be taken to her home, and the defendant threatened her by saying, "You're not going anywhere" and then dragged her from the living room to the bedroom and forced himself on her). Restraint, which is an element of the offense, "may arise out of words, acts, gestures or similar means which

induce reasonable apprehension that force will be used if the plaintiff does not submit, and it is sufficient if they operate upon the will of the person threatened and result in reasonable fear of personal difficulty or personal injuries." Mendoza v. Kmart, Inc., 587 F.2d at 1058 (citing Martinez v. Sears Roebuck and Co., 81 N.M. 371).

Because United States v. Zamora pre-dates Begay v. United States, it did not analyze whether the offense was roughly similar in kind, as well as in degree of risk posed, to the enumerated offenses. See Begay v. United States, 128 S. Ct. at 1584 (accepting the lower court's finding that a DUI offense "presents a serious risk of physical injury to another," but finding that the offense is not roughly similar to the enumerated crimes). In Begay v. United States, the Supreme Court "engraft[ed] a requirement onto the residual clause that a predicate crime involve 'purposeful, 'violent,' and 'aggressive' conduct.'" 128 S. Ct. at 1589 (citing James v. United States, 550 U.S. 192). The Tenth Circuit has applied this requirement, holding that "the crime at issue is sufficiently similar to the offenses enumerated in § 924(e)(2)(B)(ii) if it '*typically* involves purposeful, violent, and aggressive conduct.'" United States v. West, 550 F.3d at 966-67 (emphasis added).

After Begay v. United States, the Seventh Circuit held, in United States v. Billups, that the Wisconsin crime of false imprisonment is a crime of violence under U.S.S.G. § 4B1.1.[15] See 536 F.3d at 580. The Court emphasized the fact that "the potential for violent confrontation is obvious and significant" where a "victim does not consent in fact to his confinement or restraint." 536 F.3d at 580 (citing United States v. Zamora, 222 F.3d at 764). Distinguishing its holding from United States v. Hagenow, 423 F.3d 638 (7th Cir. 2005), where the Seventh Circuit held that the

---

[15] Under Wisconsin law, "[w]hoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class H felony." Wis. Stat. § 940.30.

Indiana offense of criminal confinement was not a crime of violence, the Seventh Circuit held that false imprisonment is inherently more coercive, because it must involve confinement or restraint and cannot be accomplished simply by "[t]ricking someone into moving voluntarily from one place to another." United States v. Billups, 536 F.3d 574 at 581 (quoting United States v. Gilbert, 464 F.3d 674, 681)(7th Cir. 2006)). The Seventh Circuit further noted that "false imprisonment always involves purposeful behavior and typically involves aggressive, violent behavior." United States v. Billups, 536 F.3d at 582.

The New Mexico offense of false imprisonment, in its ordinary commission, is purposeful, violent, and aggressive. Unlike the strict liability offense in Begay v. United States, the plain language of the New Mexico offense states that the confinement or restraining of an individual must be "intentional." NMSA 1978 § 30-4-3. See United States v. Billups, 536 F.3d at 577 (holding that the Wisconsin offense of false imprisonment is a crime of violence because the Wisconsin statute criminalized "intentionally confin[ing] or restrain[ing] another without the person's consent . . . .")(citing Wis. Stat. Ann. § 940.30)(emphasis added); United States v. Rooks, 556 F.3d 1145, 1150-51 (10th Cir. 2009)(holding that "[t]he relevant portion of Texas's sexual assault statute requires . . . intentional, non-consensual conduct against a person, and as such is distinguishable from DUIs and other crimes of negligence or recklessness"); United States v. Atkins, 2010 WL 2073594, at *5-6 (noting that Colorado's vehicular eluding law "criminalizes only purposeful conduct"); United States v. West, 550 F.3d at 970 ("Begay equates purposeful with deliberate or intentional.")(citing Begay v. United States, 553 U.S. at 145-47). In United States v. Gray, the Second Circuit noted that "Begay places a strong emphasis on intentional-purposeful-conduct as a prerequisite for a crime to be considered similar in kind to the listed crimes." United States v. Gray, 535 F.3d at 130.

The New Mexico offense of false imprisonment also qualifies as "violent" and "aggressive," as its commission increases the likelihood that the offender would deliberately harm others.  See Begay v. United States, 553 U.S. at 144.  In specific cases, the New Mexico Court of Appeals has described the acts underlying a charge of false imprisonment as violent conduct.  See State v. McGee, 132 N.M. 537, 539, 51 P.3d 1191, 1193 (Ct. App. 2002)(describing the defendant's four indictments, which included false imprisonment, as "violent conduct"); State v. Singleton, 130 N.M. at 585, 28 P.3d at 1126 (stating that the defendant threatened to injure the victim with a screwdriver if she tried to leave); State v. Bachicha, 111 N.M. at 606, 808 P.2d at 53 (describing that, when the victim attempted to escape, the"[d]efendant caught her by the hair and physically forced her to the floor while holding the rifle pointed at her head").  The facts of these cases underscore the likelihood that violent and aggressive conduct will occur during the act of false imprisonment, and persuades the Court of the violent and aggressive nature of the offense.

As the Tenth Circuit stated in United States v. Zuniga, a case decided after Begay v. United States, "it [is] unlikely that any conduct properly characterized as 'violent' could not also be characterized as 'aggressive.'"  United States v. Zuniga, 553 F.3d at 1335.  See United States v. West, 550 F.3d at 1336 ( stating that "[t]here is little doubt that knowingly flaunting the order of a police officer is aggressive conduct").  The Tenth Circuit's standard for "aggressive" conduct is met when the conduct in question is likely to produce a dangerous response.  See United States v. West, 550 F.3d at 1336.  In United States v. West, the Tenth Circuit focused on the likelihood of serious harm that could result when failing to stop at the command of a police officer, and held that it was "violent and aggressive."  550 F.3d at 970.  The Tenth Circuit reasoned that:

> [A failure to stop at the command of a police officer] is likely to lead, in the ordinary case, to a chase or at least an effort by police to apprehend the perpetrator.  All of these circumstances increase the likelihood of serious harm to the officers involved

> as well as any bystanders that by happenstance get in the way of a fleeing perpetrator or his pursuers.

United States v. West, 550 F.3d at 971.  See United States v. Zuniga, 553 F.3d at 1336 (holding that possessing a deadly weapon in a penal institution was "aggressive" conduct and stating that, "[w]hen a prisoner carries a deadly weapon, that behavior indicates a readiness to enter into conflict, which in turn creates a danger for those surrounding the armed prisoner"); United States v. Williams, 559 F.3d 1143, 1148 (10th Cir. 2009)(holding that the Oklahoma offense of battery on a police officer constitutes intentional conduct and is necessarily "purposeful, violent, and aggressive").

The conduct involved in the commission of false imprisonment makes it more similar to the enumerated crimes -- burglary, arson, extortion, or crimes involving explosives -- than to the offense of driving under the influence of alcohol.  Cf. United States v. Zuniga, 553 F.3d at 1334-1335 ("Possessing a deadly weapon is . . . more analogous to [the enumerated crimes] than it is to driving under the influence of alcohol").  Similarly, false imprisonment "indicates a readiness to enter into conflict, which in turn creates a danger for those surrounding the . . . [defendant]."  United States v. Zuniga, 553 F.3d at 1334-1335.  See  United States v. James, 550 U.S. at 199 ("[T]he most relevant common attribute of the enumerated offenses . . . is . . . that [they], while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury.").  When an individual confines or restrains another against his or her will, that behavior indicates a readiness and willingness to enter into conflict should the individual being held against his or her will attempts to escape or refuses to follow the demands that the criminal makes.  The act of false imprisonment creates a danger to the individual being falsely imprisoned, as well as to police, neighbors or family members who come to the aid of the victim.  The Court finds that the New Mexico offense of false imprisonment involves serious risks of confrontation and injury.

The Tenth Circuit has noted that the presence of a victim, which is necessary for the commission of false imprisonment, increases this risk.  See United States v. Ford, No. 09-2244, 2010 WL 2902747 at *8 (10th Cir. July 27, 2010)(assessing the Kansas crime of criminal discharge of a firearm at an occupied building and finding "the [victim's] presence increases the likelihood of at least a confrontation, if not a gunshot wound).  The Tenth Circuit also noted that two of the enumerated crimes, burglary and arson, do not require a victim's presence, and that the Kansas criminal discharge statute, which does require a person's presence, meets the second prong of the test from Begay v. United States.  See United States v. Ford, 2010 WL 2902747 at *8 (holding that, "[b]ecause the Kansas crime of criminal discharge of a firearm at an occupied building or vehicle involves purposeful, violent, and aggressive conduct, and is at least as risky as [burglary or arson], the crime qualifies as a violent felony under the ACCA's residual clause").

The Court concludes that New Mexico's false-imprisonment statute satisfies both prongs of the test from Begay v. United States.  The Tenth Circuit's holding in United States v. Zamora still controls, and the offense of false imprisonment under NMSA 1978, § 30-4-3 is a crime of violence under U.S.S.G. § 4B1.2.  Case law interpreting the § 4B1.2 residual clause is persuasive in interpreting the ACCA residual clause, and the Court finds that the offense of false imprisonment under NMSA 1978, § 30-4-3 is a violent felony under the ACCA.

In his supplemental objection, Hammons contends that, under Johnson v. United States, the New Mexico conviction of false imprisonment would not be a "violent felony" because it does not involve violent force or "conduct that presents a serious potential risk of physical injury." Supplemental Objection at 3.  In Johnson v. United States, the Supreme Court analyzed a battery

conviction under Florida law under the ACCA, 18 U.S.C § 924(e)(2)(B)(I)[16] and held that it was not a "violent felony" under the ACCA.  See 130 S. Ct. at 1274.  The Supreme Court found that, for a crime to be considered a "violent felony" for purposes of the ACCA, "the phrase 'physical force' means violent force -- [that is] force capable of causing physical pain or injury to another person." Johnson v. United States, 130 S. Ct. at 1267.

The United States responded to Hammons' supplemental objection, stating that the Supreme Court in Johnson v. United States analyzed the Florida crime under 18 U.S.C § 924(e)(2)(B)(I), the force clause of the ACCA, not 18 U.S.C § 924(e)(2)(B)(ii), the residual clause.[17]  See Response to Supplemental Objection at 3.  The United States argues that Hammons' conviction for false imprisonment qualifies under the ACCA's residual clause, 18 U.S.C § 924(e)(2)(B)(ii), is therefore unaffected by Johnson v. United States, and would be a "violent felony" under the ACCA.  See Response to Supplemental Objection at 3.  Because the Court finds that  New Mexico's false imprisonment offense qualifies as a violent felony under the residual clause, 18 U.S.C § 924(e)(2)(B)(ii), of the ACCA, and  because false imprisonment involves "purposeful, violent and aggressive conduct," the holding in Johnson v. United States does not affect the analysis conducted by the Court or its conclusion.[18]

Because the Court finds that Hammons' New Mexico convictions for false imprisonment and

---

[16]18 U.S.C § 924(e)(2)(B)(I) of the ACCA states that a "violent felony": "(I) has as an element the use, attempted use, or threatened use of physical force against the person of another."

[17]18 U.S.C § 924(e)(2)(B)(ii) of the ACCA states that a "violent felony": (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . ."

[18] In Johnson v. United States, the Supreme Court noted that "[t]he Government . . . disclaimed at sentencing any reliance upon the residual clause."  130 S. Ct. at 1274.

aggravated assault against a household member with a deadly weapon both constitute "violent felonies" under the ACCA, the Court will overrule the Defendant's Objection to Imposition of Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.

**IT IS ORDERED** that the Defendant's Objection to Imposition of Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
David M. Walsh
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Phillip P. Medrano
   Assistant Federal Public Defender
Albuquerque, New Mexico

   *Attorneys for the Defendant*