# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 07-1164 JB

ROBERT L. HAMMONS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Second Supplemental Objection, filed November 13, 2011 (Doc. 91)("Supplemental Objection"); and (ii) the Defendant's Amended Sentencing Memorandum, filed November 29, 2011 (Doc. 97)("Sentencing Memorandum"). The Court held a hearing on November 21, 2011. The primary issues are: (i) whether the Court should reconsider any portions of its previous Memorandum Opinion and Order, filed October 6, 2010 (Doc. 73)("MOO"); (ii) whether the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague; (iii) whether a 4-level enhancement should apply to Defendant Robert L. Hammons' offense level under U.S.S.G. § 2K2.1(b)(6); (iv) whether an offense level of 33 or 34 should apply to Hammons' offense level pursuant to the armed career criminal provisions of U.S.S.G. § 4B1.4; (v) whether the United States Probation Office ("USPO") correctly calculated Hammons' criminal history points; and (vi) whether a criminal history category of VI should apply to Hammons pursuant to the armed career criminal provisions of U.S.S.G. § 4B1.4(c). To the extent Hammons seeks reconsideration of the Court's prior MOO, the Court does not believe Hammons has raised any arguments that counsel in favor of any changes. Because the Court is bound by the Supreme Court of the United States' dicta stating

that the ACCA's residual clause can withstand a constitutional vagueness challenge, the Court declines to adopt Hammons' constitutional vagueness challenge. Because he used or possessed a firearm in connection with another felony offense, a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) is appropriate. Because Hammons did not use or possess a firearm in connection with a crime of violence or a controlled substance offense, the Court will apply an offense level of 33 rather than 34 under the armed career criminal provisions of U.S.S.G. § 4B1.4. Because the parties and the USPO have resolved all the issues regarding Hammons' criminal-history-point calculation, the Court overrules Hammons' objections to his criminal-history-point calculation as moot. Because Hammons did not use or possess a firearm in connection with a crime of violence or a controlled substance offense, the Court will apply a criminal history category of IV rather than a criminal history category of VI under the armed career criminal provisions of U.S.S.G. § 4B1.4.[1]

## FACTUAL BACKGROUND

On February 3, 2007, an officer with the United States Forest Service observed Hammons and a woman "in a white Chevrolet sport utility vehicle parked near an entrance to the picnic areas." Presentence Investigation Report ¶ 10, at 4, disclosed February 20, 2009 ("PSR"). The officer made contact with Hammons and the woman to determine if they had the required parking permit to use the area. See PSR ¶ 10, at 4. While approaching the vehicle, the officer "observed in plain view, Mr. Hammons who was sitting in the driver's seat, in possession of a spoon containing a white powdery substance." PSR ¶ 10, at 4. The officer also observed the woman "holding a clear zip lock bag containing a white powdery substance similar to what was in the spoon being held by Mr.

_____

[1]Following the sentencing hearing, the Court will address in a separate Memorandum Opinion and Order Hammons' requests for a sentence of 180-months imprisonment and for a recommendation of the Bureau of Prisons's Medical Center for Federal Prisoners in Springfield, Missouri as his place of imprisonment.

Hammons." PSR ¶ 10, at 4.  The officer arrested both individuals for possession of narcotics.  See PSR ¶ 11, at 4.  During the search, Hammons advised the officer that "the narcotics and everything belonged to him" rather than the woman.  PSR ¶ 11, at 4.  During a search of the vehicle, "the officer located a Smith and Wesson .22 caliber semi-automatic handgun . . . with a fully loaded magazine inside a metal box lying on the console of the vehicle."  PSR ¶ 11, at 4.  The firearm was stolen.  See PSR ¶ 11, at 4.  The zip lock bag contained "less than one ounce of marijuana, used hypodermic syringes, and a clear zip lock bag containing two kinds of prescription drugs along with a white powdery substance that later field tested positive for methamphetamine."  PSR ¶ 11, at 4.  "The weight of the methamphetamine seized was not available."  PSR ¶ 11, at 4.  Hammons advised the officer that he had lent someone "$150 to purchase methamphetamine and held the firearm as collateral."  PSR ¶ 12, at 5.  This person "was supposed to pay the $150.00 at a later date and then the firearm would be returned."  PSR ¶ 13, at 5.  During a later interview, Hammons stated that he obtained the firearm during a methamphetamine transaction in lieu of receiving $150.00 for the methamphetamine.  See PSR ¶ 13, at 5.

## PROCEDURAL BACKGROUND

On October 30, 2008, Hammons pled guilty to Count 1 of the two-count Indictment, which charged Hammons with a violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).  See Plea Agreement, filed October 30, 2008 (Doc. 33).  After Hammons entered into the Plea Agreement, Plaintiff United States of America filed a Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  See Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 at 1, filed April 21, 2009 (Doc. 38)("Notice").  In its Notice, the United States contends that 18 U.S.C. § 924 provides that a person convicted of violating 18

U.S.C. § 922(g), who has previously been convicted of at least three "violent felonies," shall be imprisoned not less than fifteen years, and that Hammons has the requisite number of prior violent felony convictions.  See Notice at 1.

Hammons objected to the United States' Notice, arguing that his false imprisonment convictions and his aggravated assault conviction do not fall within the definition of "violent felony" under the ACCA.  Defendant's Objection to Imposition of Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 at 1, 8, filed August 28, 2009 (Doc. 47)("Objection").  The Court took Hammons' objections under advisement.  On October 6, 2010, the Court overruled Hammons' objections to the United States' Notice, finding that New Mexico's aggravated assault and false-imprisonment statutes each constitute "violent felonies" under the ACCA.  MOO at 1-2.  Since the Court issued its MOO, the Court on October 28, 2010 authorized the appointment of a new attorney for Hammons.  See Doc. 80.

The USPO disclosed a PSR for Hammons on February 20, 2009.  In the PSR, the USPO calculates Hammons' total offense level to be 31.  See PSR ¶ 31, at 8.  The PSR applies a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) based on "the defendant committ[ing] any part of the instant offense subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled substance offense."  PSR ¶ 22, at 6.  The PSR applies a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) based on "the defendant us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense," and having methamphetamine in his possession during the commission of the offense.  PSR ¶ 23, at 7.  The PSR applies a 2-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A), because a firearm in Hammons' possession was stolen.  PSR ¶ 24, at 7.  After calculating an adjusted offense level of 30, see PSR ¶ 28, at 7, the PSR instead applies an offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A) based on Hammons using

or possessing a firearm in connection with either a crime of violence or a controlled substance offense. See PSR ¶ 29, at 7-8. The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Hammons' acceptance of responsibility. PSR ¶ 30, at 8. Before applying the armed career criminal provisions in U.S.S.G. § 4B1.4(c), the PSR lists his criminal history category as V, based on 10 criminal history points. See PSR ¶ 43, at 13. The USPO then applies a criminal history category of VI under U.S.S.G. § 4B1.4(c) based on Hammons using or possessing a firearm in connection with either a crime of violence or a controlled substance offense. See PSR ¶ 43, at 13. The PSR calculates that an offense level of 31 and a criminal history category of VI results in a guideline imprisonment range of 188 to 235 months. See PSR ¶ 93, at 24. There being no disputes about the factual findings in the PSR, the Court adopts them as its own. On September 1, 2009, the USPO disclosed an Addendum to the PSR to address Hammons' objections that his prior convictions for aggravated assault and false imprisonment are not crimes of violence.

On November 11, 2011, Hammons filed a sentencing memorandum. See Doc. 90. Hammons eventually amended this sentencing memorandum. See Doc. 97. In his amended Sentencing Memorandum, he argues that the PSR improperly applies a 4-level increase under U.S.S.G. § 2K2.1(b)(6), because he did not use or possess a firearm in connection with another felony offense. See Sentencing Memorandum at 4. He asserts that the possession was not in connection with another felony offense, as his possession did not facilitate or have the potential of facilitating another felony offense. See Sentencing Memorandum at 4. He contends that the location of the firearm, his preparation of the methamphetamine for self-administration, and the quantity of the methamphetamine seized indicate that he was not involved in drug trafficking. See Sentencing Memorandum at 5. He concedes that possession of methamphetamine is a fourth-

degree felony[2] under New Mexico law, but emphasizes "that, on the particular facts of this case, he did not use or possess the firearm in connection with his possession of methamphetamine." Sentencing Memorandum at 5.  Hammons argues that the PSR, pursuant to the armed career criminal provisions in U.S.S.G. § 4B1.4, improperly applies an offense level of 34 as opposed to 33. See Sentencing Memorandum at 6.  He contends that an offense level from U.S.S.G. § 4B1.1, which U.S.S.G. § 4B1.4(a)(2) references, does not apply, because U.S.S.G. § 4B1.1 "requires that the instant offense of conviction be either a 'crime of violence or a controlled substance offense.'" Sentencing Memorandum at 6-7.  He asserts that the instant offense of "[u]nlawful possession of a firearm by a felon is not a 'crime of violence.'"  Sentencing Memorandum at 7 (citing U.S.S.G. § 4B1.2 cmt. n.1).   Additionally, he asserts that an offense level of 34 under U.S.S.G. § 4B1.4(a)(3)(A) would not apply, as he "did not use or possess the firearm in connection with a crime of violence," or a "controlled substance offense."  Sentencing Memorandum at 7.  Thus, he asserts, he should receive a total offense level of 30 rather than 31.  See Sentencing Memorandum at 7.

Regarding his criminal history, he argues that the convictions listed in paragraphs 38 and 39 of the PSR should count as a single sentence, which would make these offenses result in 3 criminal history points as opposed to 4 criminal history points.  See Sentencing Memorandum at 7-8. Additionally, he contends that, under U.S.S.G. § 4A1.1(b), his sentence of imprisonment for the convictions listed in paragraphs 38 and 39 of the PSR was only 364 days rather than "one year and one month," which means that he should receive only 2 criminal history points as opposed to 3 points for these offenses.  Sentencing Memorandum at 8.  Thus, he asserts, his "total number of

---

[2]Under New Mexico law, a fourth degree felony is punishable by "eighteen months imprisonment."  N.M.S.A. 1978, § 31-18-15(A).

points should be 7, which establishes a Criminal History Category of IV." Sentencing Memorandum at 8.  He also objects to the PSR's application of a criminal history category of VI under U.S.S.G. § 4B1.4(c)(2) based on "the presumption of the use or possession of the firearm in connection with a crime of violence as defined in § 4B1.2(a) or a controlled substance offense as defined in 4B1.2(b)."  Sentencing Memorandum at 8.  He argues that he did not use or possess the firearm in connection with a crime of violence, as the "unlawful possession of a firearm by a felon" is not a crime of violence.  See Sentencing Memorandum at 8.  He also contends that he did not possess the firearm in connection with a "controlled substance offense" within the meaning of that term. Sentencing Memorandum at 8.  He notes that his criminal history category would be V, if the Court applies 10 criminal history points but does not apply the career offender enhancement to his criminal history category.  See Sentencing Memorandum at 9.  He notes that the resulting guideline range would either be "below or not significantly higher than the 180 months mandatory minimum" under 18 U.S.C. § 924(e).  See Sentencing Memorandum at 7.

Hammons asks the Court for a sentence of 180-months imprisonment -- the statutory minimum for his offense.  See Sentencing Memorandum at 12-13.  He asks the Court to consider "that two (2) of the predicate convictions upon which the enhanced sentence as an armed career criminal is based, and the most serious convictions in his history, date back over thirty (30) years ago, and the third predicate conviction(s) relate to events over ten (10) years ago."  Sentencing Memorandum at 10.  He concedes that he suffered no abuse as a child, but notes "that, since his father expected all the children to work and do daily chores 'there wasn't much time to be a child.'" Sentencing Memorandum at 10.  He notes that, after dropping out of high school when he was younger, "he returned to studying and persevered to obtain first a General Equivalency Diploma, then an Associate's Degree in general studies and an Automotive Technician Certificate."

Sentencing Memorandum at 1.  He states that he has worked primarily in the automotive field and has worked throughout his life.  See Sentencing Memorandum at 11.  He asks the Court to consider that he "is a veteran, having served his country in the United States Coast Guard, from which he was honorably discharged."  Sentencing Memorandum at 11.  He asserts that he "has a close relationship with his partner, Pamela Blackwell," and notes that "he has also served as a positive role model to her children."  Sentencing Memorandum at 11.  He states that he is an active member of his church. See Sentencing Memorandum at 11-12.  He contends that he "is now 62 years old and has several medical and psychological problems."  Sentencing Memorandum at 12.  He asks the Court to consider that he has problems such as chronic back pain, elevated blood pressure, thyroid problems, and chronic dental problems.  See Sentencing Memorandum at 12.  He states that, based on the mandatory sentence he now faces, he "is confronting the bleak reality of spending the rest of his life in federal prison."  Sentencing Memorandum at 12.  He asks the Court to recommend the "Bureau of Prisons's Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri" as his detention facility.  Sentencing Memorandum at 12.

On November 16, 2011, the United States filed the United States' Response to Defendant's Sentencing Memorandum (Doc. 90).  See Doc. 93 ("Response to Sentencing Memorandum").  The United States argues that the PSR correctly applied an enhancement under U.S.S.G. § 2K2.1(b)(6), because: (i) "a weapon's mere proximity to narcotics may be sufficient to support" this enhancement; and (ii) Hammons has admitted "that the firearm was acquired in connection with methamphetamine."  Response to Sentencing Memorandum at 1-2.  The United States asserts "that all other aspects of the PSR, including criminal history, were correctly calculated by the United States Probation."  Response to Sentencing Memorandum at 2.

In response to Hammons' Sentencing Memorandum, the USPO issued a Second Addendum

-8-

to the PSR.  The USPO responds to his objection to the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) by stating that he was in possession of a firearm and engaged in a controlled substance offense.  See Second Addendum to PSR at 1-2.  To support its application of this guideline on the basis that a controlled substance offense occurred, the USPO points out that Hammons "was subsequently charged in the Second Judicial District Court, Albuquerque, New Mexico with trafficking a controlled substance, a second degree felony punishable by nine years imprisonment" based on his conduct in this incident.  Second Addendum to PSR at 1-2.[3]  The USPO acknowledges that prosecutors subsequently dismissed this charge.  See Second Addendum to PSR at 1-2.  Similarly, the USPO relies on these two facts to respond to his objection that a base offense level of 34 should not apply under U.S.S.G. § 4B1.4(a)(2) and 4B1.4(b)(3)(A).  See Second Addendum to PSR at 2.  Regarding his objection to the application of a criminal history category of VI under U.S.S.G. § 4B1.4(c)(2), the USPO similarly relies on these two facts to support its imposition of the higher criminal history category.  See Second Addendum to PSR at 2.  Regarding Hammons' objection that the offenses in paragraphs 38 and 39 of the PSR should receive treatment as a single sentence, the USPO asserts that these sentences should receive separate treatment, because "prior sentences are always counted separately if the sentences imposed were for offenses that were separated by an intervening arrest."  Second Addendum to PSR at 3.  The USPO asserts that there was an intervening arrest in this case.  See Second Addendum to PSR at 3.  The USPO agreed with his objection that the number of criminal history points assigned in paragraph 38 should be 2 rather than 3 based on the length of the sentence.  See Second Addendum to PSR at 3.  Pursuant to an

---

[3]Under New Mexico law, a second degree felony is: (i) punishable by "fifteen years imprisonment" if it results "in the death of a human being"; (ii) punishable by "fifteen years imprisonment" if it is a "sexual offense against a child"; and (iii) "nine years imprisonment" otherwise.  See N.M.S.A. 1978, § 31-18-15(A).

amendment to the sentencing guidelines effective on November 1, 2010, which eliminated "recency" points under U.S.S.G. § 4A1.1(e), the USPO removed the recency points it applied based on the commission of "the instant offense less than two years after release from imprisonment." Second Addendum to PSR at 3. The USPO then reduced his criminal history points to 7 rather than 10, which lowered his default criminal history category to IV. See Second Addendum to PSR at 3. The USPO further stated that the applicable criminal history category would still be VI based on the career offender provisions in U.S.S.G. § 4B1.4(c)(2). See Second Addendum to PSR at 3.

Hammons filed his Supplemental Objection on November 13, 2011. He filed this Supplemental Objection to address "issues that were not previously raised by Defendant's former counsel" as part of previous objections. Supplemental Objection at 1-2. He argues that the ACCA's residual clause regarding crimes of violence is unconstitutionally vague. See Supplemental Objection at 7-8. While recognizing that the Supreme Court has suggested in dicta that this residual clause is not unconstitutionally vague, he asserts that several Supreme Court Justices have expressed their doubts that the clause is constitutional. See Supplemental Objection at 10-11. He asserts that there are conflicting opinions in different circuit courts whether certain offenses are violent felonies, which counsels in favor of finding the clause unconstitutionally vague. See Supplemental Objection at 11-12. He contends that the clause does not give defendants fair warning as to the criminal nature of their conduct. See Supplemental Objection at 12.[4]

---

[4]Hammons uses some language in his Supplemental Objection suggesting that he criticizes some of the Court's holdings in its prior MOO. See Supplemental Objection at 2-7. He does not, however, ask the Court to reconsider any holdings in its prior MOO and sets out this language in a section entitled: "Procedural Background." Supplemental Objection at 1-7. He sets out his argument regarding constitutional vagueness in a separate section entitled: "The Residual Clause of ACCA is Unconstitutionally Vague." Supplemental Objection at 7. Consequently, because it does not appear Hammons has raised any arguments asking the Court to reconsider its holdings in its prior MOO, the Court does not construe any of this language in his Supplemental Objection as

On November 15, 2011, the United States filed its United States' Response to Defendant's Second Supplemental Objection (Doc. 91).  See Doc. 92 ("Response to Supplemental Objection"). The United States asserts that a majority of the Supreme Court has already rejected his argument that the residual clause of the ACCA is unconstitutional.  See Response to Supplemental Objection at 1 (citing James v. United States, 550 U.S. 192, 210 n.6 (2007)).  The United States contends that, "[e]ven if this Supreme Court position were to be considered dicta, it is dicta that nonetheless must be followed by lower courts."  Response to Supplemental Objection at 1 (citing United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007)).  On November 18, 2011, the USPO disclosed a Third Addendum to the PSR.  This addendum states that Hammons provided a letter indicating his acceptance of responsibility.  See Third Addendum to PSR at 1.  The addendum then quotes the relevant provisions from the letter.  See Third Addendum to PSR at 1-2.

At the hearing on November 21, 2011, the Court asked whether it could fairly characterize the Supplemental Objection as a motion to reconsider the Court's rulings in its prior MOO.  See Transcript of Hearing at 3:21-4:3 (taken November 21, 2011)(Court)("Tr.").[5]  Hammons clarified that he was seeking to raise and preserve his constitutional vagueness argument rather than to seek reconsideration of any of the holdings in the prior MOO.  See Tr. at 4:4-25 (Fisher, Court).  He argued that he did not use or possess a firearm with the commission of a violent crime or a

_____

asking the Court to reconsider any holdings in its prior MOO.  Additionally, at the hearing on November 21, 2011, Hammons did not characterize this Supplemental Objection as seeking reconsideration on the Court's holdings in its prior MOO.  See Transcript of Hearing at 4:4-25 (taken November 21, 2011)(Fisher, Court)("Tr."); id. at 12:6-17 (Fisher).  The Court will, however, address one issue raised in the Supplemental Objection regarding the application of the modified categorical approach to Hammons' false imprisonment conviction.

[5]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

controlled substance offense for purposes of several of the guideline calculations that enhanced his sentence and criminal history category.  See Tr. at 5:15-6:14 (Fisher).  The United States asserted that mere possession of a firearm in connection with felony drug possession can meet the requirement for enhancements under the provisions regarding a controlled substance offense in the applicable guidelines.  See Tr. at 6:21-7:10 (Walsh).  The United States noted that it did not ultimately oppose a sentence of 180-months imprisonment if that would help expedite the sentencing process.  See Tr. at 7:11-23 (Walsh).  Hammons withdrew his fourth objection regarding the offenses in paragraphs 38 and 39 of the PSR counting as one sentence based on the USPO's explanation of that issue in its Second Addendum to the PSR.  See Tr. at 8:6-15 (Fisher).  He also stated that the USPO adequately addressed his objection regarding the assignment of criminal history points to the offenses in paragraph 38 under U.S.S.G. § 4A1.1(b).  See Tr. at 8:18-21 (Fisher).  The United States acknowledged that it agreed with the USPO's response to that objection. See Tr. at 8:22-25 (Court, Walsh).  Hammons contended that several current and former Supreme Court Justices had expressed doubts about the constitutionality of the ACCA's residual clause.  See Tr. at 11:18-24 (Fisher).  He stated that the United States Court of Appeals for the Tenth Circuit has not yet addressed this issue.  See Tr. at 14:4-8 (Court, Fisher).  The United States asserted that the Court found in its prior MOO that Hammons' aggravated assault conviction qualified as a predicate offense for career criminal purposes relying on both the residual clause and a separate provision of the ACCA.  See Tr. at 15:14-22 (Walsh).  The United States argued that, as a result, it would not be necessary for the Court to address the issue of constitutional vagueness, because Hammons will have three qualifying convictions regardless of how the Court decides the constitutional issue.  See Tr. at 15:19-22 (Walsh).  The United States argued that this Court is bound by Supreme Court dicta. See Tr. at 16:9-16 (Walsh).  Hammons conceded that the Tenth Circuit has stated that Supreme

Court dicta binds lower courts.  See Tr. at 17:12-18 (Fisher, Court).

### LAW REGARDING A STATUTE BEING VOID FOR VAGUENESS

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998)(internal quotation marks omitted).  Accord Am. Ass'n of People with Disabilities v. Herrera, No. 08-0702, 2010 WL 3834049, at *4-7 (D.N.M. July 28, 2010)(Browning, J.).  The "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  United States v. Williams, 553 U.S. 285, 304 (2008).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colorado, 530 U.S. 703, 732 (2000)(citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)).  See United States v. Williams, 553 U.S. at 304 (describing a vague statute as failing "to provide a person of ordinary intelligence fair notice of what is prohibited, or [as being] so standardless that it authorizes or encourages seriously discriminatory enforcement."); Mini Spas, Inc. v. S. Salt Lake City Corp., 810 F.2d 939, 942 (10th Cir. 1987)("A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated.").  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  United States v. Williams, 553 U.S. at 306.  The Supreme Court has noted that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  United States v. Williams, 553 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

-13-

In determining whether a federal statute is unconstitutionally vague, the Supreme Court has noted that a strong presumption of validity attaches to Congress' enactments and has consistently construed a challenged statute narrowly rather than condemn it as unconstitutionally vague.  See Skilling v. United States, 130 S.Ct. 2896, 2929, 2930 (2010)("It has long been our practice, however, before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction."); United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32 (1963)(stressing, in response to a vagueness challenge, "[t]he strong presumptive validity that attaches to an Act of Congress").  In Skilling v. United States, the Supreme Court looked to Congress' intent in passing the honest-services doctrine, and limited the construction of the honest-services doctrine to reach bribes and kickbacks, as Congress intended, stating:

> [T]here is no doubt that Congress intended § 1346 to reach at least bribes and kickbacks.  Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine.  To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-McNally case law.

Skilling v. United States, 130 S.Ct. at 2931.

## LAW REGARDING U.S.S.G. § 2K2.1(b)(6)

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A).

The Tenth Circuit has held on several occasions that physical proximity between a weapon

and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6).  See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467 (10th Cir. 1993).  In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers trade.  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[6]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."  United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F.App'x 724, 727 (10th Cir. 2006)(unpublished)(holding enhancement applied where the defendant possessed firearm in connection with possessing methamphetamine).

In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then

---

[6]Section 2K2.1(b)(5) is now § 2K2.1(b)(6) in the 2007 Sentencing Guidelines Manual. There have been no modifications to the guidelines between the date Hammons committed the crime of felon in possession of a firearm and the present time that would warrant using an older guidelines manual.  See United States v. Montoya, 428 F.App'x 791, 795 (10th Cir. 2011)(unpublished)("A sentencing court is generally required to apply the Guidelines that are in effect on the date the defendant is sentenced.  However, the ex post facto clause bars the sentencing court from retroactively applying an amended guideline provision when that amendment disadvantages the defendant." (internal quotation marks omitted)).

arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See 199 F.App'x at 725-26.   The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search. See id. at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See id.  Nonetheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine.  See id. at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"  Id. (quoting with approval the district court).  The Tenth Circuit affirmed.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); United States v. Cunningham, No. 06-2493, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.).  Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered.  See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003); United States v. Green, 255 F.App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 F.App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in

connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-685.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

## SENTENCING ENHANCEMENTS FOR VIOLENT FELONIES AND CRIMES OF VIOLENCE

The United States Sentencing Guidelines provide for different sentence enhancements, depending on whether a crime constitutes a "crime of violence" or a "violent felony."  United States v. Hammons, No. 07-1164, 2010 WL 4321693, at *5 (D.N.M. Oct. 6, 2010)(Browning, J.). Although the definitions of the terms vary throughout the guidelines, case law interpreting the term "violent felony" is often persuasive to courts interpreting the term "crime of violence," and vice versa.  United States v. Jackson, No. 05-8003, 2006 WL 991114, at *2 (10th Cir. Apr. 16, 2006)(unpublished).  Courts must be precise when addressing objections to the application of particular sentencing enhancements, given violations of particular criminal statutes.  A court's "analysis must be attuned to the particular statute or guideline in question."  United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009).

The ACCA, which is codified at 18 U.S.C. § 924(e), imposes a mandatory minimum sentence for certain offenders with multiple criminal convictions and provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both,

committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1).  The ACCA defines a "violent felony" as:

>    (B)    . . . any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
>        (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
>        (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Pursuant to U.S.S.G. § 4B1.4, a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) is considered an armed career criminal and is subject to a mandatory minimum statutory sentence of fifteen years under the ACCA.  U.S.S.G. § 4B1.4 provides in relevant part:

>    (a)    A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.
>
>    (b)    The offense level for an armed career criminal is the greatest of:
>
>        (1)    the offense level applicable from Chapters Two and Three; or
>
>        (2)    the offense level from § 4B1.1 (Career Offender) if applicable; or
>
>        (3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or
>
>        (B)    33, otherwise.

U.S.S.G. § 4B1.4.

A defendant who is subject to an enhanced sentence under 18 U.S.C. §§ 924(c) or 929(a) is

considered a career offender, and is subject to sentencing pursuant to U.S.S.G. §§ 4B1.1 and 4B1.2, the career-offender provisions of the sentencing guidelines.  The Tenth Circuit has noted that the definition of "crime of violence" in these sections is nearly identical to the definition of "violent felony" in the ACCA, explaining:

> The [Sentencing] Commission promulgated its career offender provisions in section 4B1.1 and 4B1.2 pursuant to a mandate from Congress.  It originally defined "crime of violence" by reference to 18 U.S.C. § 16, but later replaced this definition with one patterned after § 924(e)(2)(B), . . . with one significant difference.  The Commission's definition conspicuously omitted burglary, with the single exception of "burglary of a dwelling."

United States v. Smith, 10 F.3d 724, 733 (10th Cir. 1993).  See U.S.S.G. § 4B1.1 cmt. background (noting that § 4B1.1 is the guidelines' implementation of a Congressional directive and not a mandatory minimum sentencing statute).  Section 4B1.1 defines "crime of violence" by reference to U.S.S.G. § 4B1.2.  See U.S.S.G. § 4B1.1 cmt. n.1.  Section 4B1.2(a) defines "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> > (1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2)     is burglary of a dwelling, arson, or extortion, involves use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2.

## RELEVANT CRIMINAL HISTORY CATEGORY

U.S.S.G. § 4A1.1 states, in relevant part: "The total points from items (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A." Subsection  (b) states: "Add 2 points for each prior sentence of imprisonment of at least sixty days

-19-

not counted in (a)." U.S.S.G. § 4A1.1(b). Subsection (a) states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a).

The Application Note for § 4A1.1(b) indicates that the term "prior sentence" is defined at § 4A1.2(a). U.S.S.G. § 4A1.2(a)(2) states:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; and (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2). U.S.S.G. § 4A1.1(e) states: "Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was counted as a single sentence, up to a total of 3 points for this subsection."

U.S.S.G. § 4A1.1(e).[7] The application note to U.S.S.G. § 4A1.1(e) provides:

> In a case in which the defendant received two or more prior sentences as a result of convictions for crimes of violence that are counted as a single sentence (see § 4A1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that did not result in any additional points under § 4A1.1(a), (b), or (c). A total of up to 3 points may be added under § 4A1.1(e). For purposes of this guideline, 'crime of violence' has the meaning given that term in § 4B1.2(a). See § 4A1.2(p).

U.S.S.G. § 4A1.1 cmt. n.5. U.S.S.G. § 4B1.4(c) provides:

> (c)   The criminal history category for an armed career criminal is the greatest of:
>
>   (1)   the criminal history category from Chapter Four, Part A (Criminal History), or § 4B1.1 (Career Offender) if applicable; or
>
>   (2)   Category VI, if the defendant used or possessed the firearm or

---

[7]Before an amendment to this guideline in 2010, subsection (e) was designated as subsection (f). See U.S. Sentencing Guidelines Manual app. C, vol. III, at 354-56 (2011). This amendment is designated as Amendment 742. See U.S. Sentencing Guidelines Manual app. C, vol. III, at 354-56.

ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

(3)     Category IV.

U.S.S.G. § 4B1.4(c).

## ANALYSIS

To the extent Hammons seeks reconsideration of the Court's prior MOO, the Court does not believe Hammons has raised any arguments that counsel in favor of any changes. Because the Court is bound by the Supreme Court's dicta stating that the ACCA's residual clause can withstand a constitutional vagueness challenge, the Court declines to adopt Hammons' constitutional vagueness challenge. Because he used or possessed a firearm in connection with another felony offense, a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) is appropriate. Because Hammons did not use or possess a firearm in connection with a crime of violence or a controlled substance offense, the Court will apply an offense level of 33 rather than 34 under the armed career criminal provisions of U.S.S.G. § 4B1.4. Because the parties and the USPO have resolved all the issues regarding Hammons' criminal-history-point calculation, the Court overrules Hammons' objections to his criminal-history-point calculation as moot. Because Hammons did not use or possess a firearm in connection with a crime of violence or a controlled substance offense, the Court will apply a criminal history category of IV rather than a criminal history category of VI under the armed career criminal provisions of U.S.S.G. § 4B1.4.

## I.     THE COURT DOES NOT FIND IT NECESSARY TO CHANGE ANY PORTION OF ITS PRIOR MOO.

Hammons discusses at length the procedural background of this case in his Supplemental Objection, including a detailed discussion of the Court's prior MOO. See Supplemental Objection

at 1-7.  Much of this discussion of the procedural background recounts the arguments the parties raised regarding the application of the ACCA and how the Court resolved those arguments.  The discussion largely provides no additional elaboration on his previously raised arguments or how the Court dealt with them in its MOO.  One paragraph appears to raise an issue not addressed in Hammons' previous arguments, specifically whether the Court should apply the categorical approach or the modified categorical approach in determining whether the ACCA's residual clause applies to his false imprisonment conviction:

> In its Memorandum Opinion and Order [*Doc. 73*], this Court's application of the categorical approach implies that it rejected the argument that there was any way that the crime of false imprisonment could be committed without involving violent or aggressive conduct.  Accordingly, in so doing, it did not look at any of the underlying additional material that might be utilized to clarify the facts in a modified categorical approach.  However, the Court supported its decision by reference to the facts in previously decided New Mexico cases as demonstrative of the fact that the New Mexico offense of false imprisonment is "violent" and "aggressive" and of the substantial risk of physical injury involved in instances of false imprisonment.

Supplemental Objection at 6.  The Court notes that Hammons stated at the hearing that he is not seeking reconsideration.  See Tr. at 4:4-25; id. at 12:6-17 (Fisher).  While Hammons and his new attorney do not ask the Court to reconsider its prior MOO, the Court will address this additional argument in case Hammons decides to present them to the Tenth Circuit.  Additionally, because Hammons has received a new attorney since the Court issued its MOO, the Court will briefly address this portion of the Supplemental Objection.  The Court has otherwise consulted its prior MOO and has found no holdings that it feels are necessary to revisit.

In determining whether a conviction is a violent felony under 18 U.S.C. § 924(e)(2)(B)(i), a court ordinarily applies a "categorical approach" under which a court looks "only to the fact of conviction and the statutory definition of the prior offense, and does not generally consider the particular facts disclosed by the record of conviction."  United States v. Scoville, 561 F.3d 1174,

1176 (10th Cir. 2009).  See United States v. Silva, 608 F.3d at 668 (applying a categorical approach to determine whether a prior conviction qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i)).   All that is relevant is "'whether the elements of the offense are of the type that would justify its inclusion' within the ACCA"; a court does not "'inquir[e] into the specific conduct of this particular offender.'"  United States v. Scoville, 561 F.3d at 1176 (quoting James v. United States, 550 U.S. at 202).  See Begay v. United States, 553 U.S. 137, 142-43 (2008)("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Hernandez, 568 F.3d 827, 829 (10th Cir. 2009).

> In determining whether a conviction obtained under this statute is a "violent felony" within the meaning of § 4B1.2(a), we apply a formal categorical approach looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions.
>
> Applying this approach, it is clear a violation of Wyo. Stat. Ann. § 7-18- 112 is not a violent felony within the meaning of the guideline because . . . it is a crime of inaction and does not "involve[] conduct that presents a serious potential risk of physical injury to another."

United States v. Pappan, 315 F.App'x 677, 682 (10th Cir. 2009)(unpublished)(footnotes omitted)(citations omitted).

If a criminal statute proscribes both conduct that falls within the definition of violent felony and conduct that falls outside of it, a court uses a "modified categorical approach," under which a court may also look at the charging documents and the documents of conviction to determine whether the defendant was convicted of a violent felony.  United States v. Scoville, 561 F.3d at 1176; United States v. Avalos, 315 F.App'x 731, 732 (10th Cir. 2009)(unpublished)("[W]e employ the so-called 'modified categorical approach' when the statute of conviction encompasses both

violent and nonviolent crimes."). The Tenth Circuit clarified the proper use of the modified categorical approach in United States v. Herrera, stating: "[The modified categorical approach] is properly used when the underlying statute of conviction contains multiple element sets and is therefore divisible." 286 F.App'x at 552. See United States v. Silva, 608 F.3d at 668 (stating that the modified categorical approach involves consulting "charging documents and documents of conviction"(quoting United States v. Hernandez, 568 F.3d at 829)). Additionally, "[i]f the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute 'to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the court.'" United States v. Ruiz-Rodriguez, 494 F.3d 1273, 1275 (10th Cir. 2007). Nevertheless, the Supreme Court has held that the categorical approach does not "require[] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." James v. United States, 550 U.S. at 208.

New Mexico defines the crime of false imprisonment as "intentionally confining or restraining another person without his consent and with knowledge that he has not lawful authority to do so." N.M.S.A. 1978, § 30-4-3. There is only one set of elements and no disjunctive set of elements. Thus, as a general matter, the categorical approach would be appropriate when assessing this statute under the ACCA's residual clause as opposed to the modified categorical approach. See United States v. Silva, 608 F.3d at 668. The Court decided in its prior MOO that the categorical approach was the appropriate method under which to evaluate this false imprisonment statute, because "New Mexico's offense of false imprisonment does not proscribe a range of conduct that is broader than the ACCA's definition." MOO at 38. The Court then proceeded to explain why this crime is a crime of violence under this categorical approach, focusing largely on: (i) that the statute

-24-

required that an offender engage in intentional conduct; (ii) that situations involving this type of offense would present a serious risk of physical injury to another; and (iii) that the statute is similar to the ACCA's enumerated crimes -- burglary, arson, extortion, or crimes involving explosives.  See MOO at 38-46.

Even if the Court were to apply a modified categorical approach, the documents from the previous state court proceedings available to the Court do not provide any further guidance on the question whether this offense is a crime of violence.  The available documents largely recite the statutory elements or provide no further elaboration as to the facts underlying the conviction.  The judgment states that Hammons' no-contest plea to the false imprisonment charge is "accepted and recorded by the Court," and then provides: "The Defendant is hereby found and adjudged guilty and convicted of said crimes . . . ."  Judgment, Sentence and Order Suspending Sentence at 1-2 (dated November 5, 2001), filed April 21, 2009 (Doc. 38-1)("State Court Judgment").  It then pronounces the sentence for the charges to which Hammons pled guilty without relating any additional factual information.  See State Court Judgment at 2-3.  The judgment mentions without further explanation: "Pursuant to District Court policy, conviction of a case involving domestic violence shall be reassigned to Judge Angela Jewell."  State Court Judgment at 2.  Hammons has provided no other documents to the Court from the state court proceedings.  In his Objection, he quotes the indictment from these proceedings without attaching the copy of the indictment to his Objection.  See Objection at 2.  That portion of the indictment provides: "That on or about the 1st day of October, 2000, in Bernalillo County, New Mexico, the above-named defendant restrained and/or confined Shawna Davenport against her will and with knowledge that he had no authority to do so, contrary to Section 30-4-3, NMSA 1978."  Objection at 2.  Assuming this uncertified excerpt from a public record would be admissible without the accompanying public record, see Fed. R. Evid. 803(7), this

indictment provides no additional factual information about the crime beyond a recitation of the elements of the statute, see N.M.S.A. 1978, § 30-4-3 (defining the crime of false imprisonment as "intentionally confining or restraining another person without his consent and with knowledge that he has not lawful authority to do so"). Without additional documentation from the state court, such as a plea agreement containing some factual background about the underlying crime, there is no basis for the Court to conclude that applying the modified categorical approach would reveal any additional facts about the case which would change the Court's conclusion that Hammons' false imprisonment conviction is a crime of violence for ACCA purposes. If Hammons believes this modified categorical approach would yield a different result, he should provide additional state court records to the Court for it to make that determination and articulate why the modified categorical approach should apply to this statute. The Court is concerned, however, that because the statute is not divisible, the modified categorical approach is not appropriate. That approach requires looking at the specific facts of the crime, which is not allowed under the categorical approach.

## II.   **THE ACCA'S RESIDUAL CLAUSE IS NOT UNCONSTITUTIONALLY VAGUE.**

Hammons has argued that the ACCA's residual clause is unconstitutionally vague. The Court addresses this issue first, as it could affect a variety of his other arguments regarding the appropriateness of the guideline calculations and whether the armed career criminal provisions in the guidelines apply to his offense. The Court concluded in its MOO that Hammons had three qualifying convictions for ACCA purposes that rely on the ACCA's definition of violent felony in 18 U.S.C. § 924(e)(2)(B), which covers offenses that have an element involving the use, attempted use, or threatened use of physical force against the person of another. See MOO at 31, 33-37. U.S.S.G. § 4B1.2(a) provides a "virtually identical" definition for "crime of violence" as the ACCA provides for a "'violent felony' under the [ACCA]." United States v. Avalos, 315 F.App'x at 732.

Thus, even if the Court sustains the constitutional vagueness challenge, Hammons will still have three qualifying convictions for ACCA purposes.

Because the Court in part relied on the residual clause when applying the ACCA enhancement, the Court will address Hammons' constitutional vagueness challenge. The Court concludes that it is bound by the Supreme Court's dicta in James v. United States. The relevant portion of James v. United States is as follows:

> While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion -- which was not pressed by James or his amici -- that the residual provision is unconstitutionally vague. The statutory requirement that an unenumerated crime "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another" is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits. Similar formulations have been used in other federal and state criminal statutes.

550 U.S. at 210 n.6 (alteration in original)(citations omitted). The Tenth Circuit has recognized that lower courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings." United States v. Langford, 641 F.3d 1195, 1198 n.2 (10th Cir. 2011)(quoting United States v. Serawop, 505 F.3d at 1122). Given this language in James v. United States that squarely recognizes that the ACCA's residual clause is not constitutionally deficient on vagueness grounds, the Court concludes it is bound by the Supreme Court's dicta stating that the residual clause could withstand a constitutional vagueness challenge. The Tenth Circuit has directed that this Court is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings." United States v. Langford, 641 F.3d at 1198 n.2. The United States Court of Appeals for the Fifth Circuit has squarely rejected a constitutional vagueness challenge to the residual clause, holding that "[t]his argument was rejected by the Court's opinion in James." United States v. Gore, 636 F.3d 728, 742 (5th Cir. 2011). While the ACCA's residual clause may be difficult to apply in a particular case,

"[f]acial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." Nat'l Endowment for the Arts v. Finley, 524 U.S. at 580. Courts have to make many difficult interpretations and applications of congressional statutes. The Supreme Court has recognized that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." United States v. Williams, 553 U.S. at 304. Here, the statute is interpreted narrowly and does not apply to many potential situations. In other words, any ambiguity generally works in the defendant's favor. There is no fundamental unfairness in Congress' choice of language. While there is a temptation to join Justice Scalia and throw up our judicial hands with the frustration of dealing with the effects of the categorical approach, the Court concludes that the difficulty does not rise to constitutional dimensions. Moreover, the difficulty in applying the definition of crime of violence may not be so much with Congress' choice of words as the Supreme Court's categorical approach, which can be quite difficult in its application.[8]

## III.   THE COURT WILL APPLY A 4-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2K2.1(b)(6).

Hammons argues that the USPO improperly applied a 4-level enhancement to his offense level under U.S.S.G § 2K2.1(b)(6). Courts have taken a liberal approach to applying the 4-level enhancement under this guideline. U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G.

_____

[8]For instance, the Tenth Circuit in one case concluded that drugging a person with chemicals did not qualify as a crime of violence, because the crime did not involve the use of physical force. See United States v. Rodriguez-Enriquez, 518 F.3d 1191, 1193-95 (10th Cir. 2008)("Thus, the adjective physical must refer to the mechanism by which the force is imparted to the 'person of another.'" (emphasis in original)). In a later case, the Tenth Circuit concluded that placing a person in fear of being poisoned under a menacing statute would qualify as a crime of violence. See United States v. Armijo, 651 F.3d 1226, 1230-32 (10th Cir. 2011).

§ 2K2.1(b)(6).  Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. n.14(A).  Application note 14 also provides that, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," courts may properly apply U.S.S.G. § 2K2.1(b)(6), "because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively."  U.S.S.G. § 2K2.1 cmt. n.14(B).

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6).  See, e.g., United States v. Bunner, 134 F.3d at 1006; United States v. Gomez-Arrellano, 5 F.3d at 467.  In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers trade.  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."  134 F.3d at 1006.

The Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."  United States v. Regans, 125 F.3d at 687.  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs. See United States v. Bell, 310 F.3d at 605-606.  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F.App'x at 727 (holding enhancement applied where the defendant possessed firearm in connection with possessing methamphetamine).

In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then

arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See 199 F.App'x at 725-26.   The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search. See id. at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See id.  Nonetheless, the district court found by a preponderance of the evidence that the firearm was possessed in connection with felony possession of methamphetamine.  See id. at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"  Id. (quoting with approval the district court).  The Tenth Circuit affirmed.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d at 1999 (holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs").  An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d at 1230 n.3.  In United States v. Magallanez, the Tenth Circuit held that, even after United States v. Booker, as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-685.

The facts in this case are almost identical to those in United States v. Fent, where the Tenth Circuit upheld application of this 4-level enhancement.  Here, the firearm was on the console immediately within Hammons' reach and some of the methamphetamine was in Hammons' hands.

In comparison, in United States v. Fent, the firearm and the methamphetamine were in the trunk of the vehicle.  Hammons was also charged with a drug trafficking offense in state court, unlike the defendant in United States v. Fent, although those charges were ultimately dismissed.  See Second Addendum to PSR at 1.  It is notable that this guideline does not require the use or possession of a felony during the commission of a drug trafficking offense, such as distributing methamphetamine, but only a felony, which would include simple possession of methamphetamine.  See U.S.S.G. § 2K2.1(b)(6).  The Eighth Circuit has held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d at 605-606 (citing United States v. Martinez, 258 F.3d 760, 761-62 (8th Cir. 2001)).  The Court finds it significant that this guideline requires only that the defendant commit another felony while in possession of a firearm rather than a drug trafficking offense or controlled substance offense as defined in U.S.S.G. § 4B1.2(b).[9]  The broader application of this guideline to all felonies reflects the United States Sentencing Commission's intent that this guideline apply in a broader range of circumstances, including simple felony drug possession crimes.  Lastly, contrary to Hammons' argument, see Sentencing Memorandum at 5, it is generally not relevant what the amount of drugs in the defendant's possession are, see United States v. Condren, 18 F.3d at 1999 (holding that the 4-level enhancement "may be based on any

---

[9]A controlled substance offense is defined as:

[A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2.

felony, including, as here, felony possession of a small amount of drugs"). Thus, the Court

concludes that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) is appropriate. The Court

reached the same conclusion in a factually similar case, <u>United States v. Cunningham</u>.[10]

## IV. THE COURT WILL APPLY AN OFFENSE LEVEL OF 33 PURSUANT TO THE ARMED CAREER CRIMINAL PROVISIONS IN U.S.S.G. § 4B1.4.

Hammons argues that the USPO improperly applied an offense level of 34 pursuant to the

armed career criminal provisions in U.S.S.G. § 4B1.4 and that it should have instead applied an

offense level of 33. Pursuant to U.S.S.G. § 4B1.4, a defendant who is subject to an enhanced

sentence under 18 U.S.C. § 924(e) is considered an armed career criminal and is subject to a

mandatory minimum statutory sentence of fifteen years under the ACCA. U.S.S.G. § 4B1.4

provides in relevant part:

> (a)    A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.
>
> (b)    The offense level for an armed career criminal is the greatest of:
>
> > (1)    the offense level applicable from Chapters Two and Three; or
> >
> > (2)    the offense level from § 4B1.1 (Career Offender) if applicable; or
> >
> > (3)(A)  34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or
> >
> > (B)    33, otherwise.

U.S.S.G. § 4B1.4. Here, the USPO applied an offense level of 34 on the basis that he possessed a

---

[10]In <u>United States v. Cunningham</u>, the Court applied a 4-level enhancement under this guideline when the defendant was carrying a small amount of crack cocaine, one bag in his jacket and one bag in his hat, and had a handgun in the center console of his vehicle, which was "close at hand and readily accessible." 2008 WL 6049940, at *13-14.

firearm in connection with a controlled substance offense.  See PSR ¶ 29, at 7-8; Second Addendum to PSR at 2.  The USPO did not rely on the crime of violence provision in U.S.S.G. § 4B1.4(b)(3)(A) as a basis for its enhancement.  See PSR ¶ 29, at 7-8; Second Addendum to PSR at 2.[11]

In interpreting the language "in connection with" in this guideline, the Tenth Circuit has held that, "'if the weapon's possession is coincidental or entirely unrelated to the offense,' it is not possessed 'in connection with' another offense." United States v. Taylor, 413 F.3d 1146, 1154 (10th Cir. 2005)(quoting United States v. Gomez-Arrellano, 5 F.3d at 466-67).  The Tenth Circuit has also recognized "that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under [the 'in connection with' language] is appropriate." United States v. Taylor, 413 F.3d at 1154 (alteration in original)(quoting United States v. Bunner, 134 F.3d at 1006).  A controlled substance offense in this context means:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).  This definition also includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses" listed within the definition. United States v. Chavez, 660 F.3d 1215, 1226 (10th Cir. 2011).  The Tenth Circuit has recognized that this definition

---

[11]Applying a similar definition of crime of violence under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-56, that appears in 18 U.S.C. § 3156(a)(4), the Court has previously determined that an offense of a felon in possession of a firearm is not a crime of violence.  See United States v. Vencomo-Reyes, No. 11-2563, 2011 WL 6013546, at *8-9 (D.N.M. Nov. 28, 2011)(Browning, J.).  The same result would likely apply here based on the high similarity of the definitions of crimes of violence contained in U.S.S.G. § 4B1.2(a) and 18 U.S.C. § 3156(a)(4).  More importantly, application note 1 to U.S.S.G. § 4B1.2 expressly states: "'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)," which lists a variety of weapons not including a .22 caliber handgun.  U.S.S.G. § 4B1.2 cmt. n.1.

"encompasses 'convictions for conduct that could have been charged as a controlled substance offense,' even if the actual charged offense would not necessarily satisfy the definition." United States v. Karam, 496 F.3d 1157, 1166 (10th Cir. 2007)(quoting United States v. Smith, 433 F.3d 714, 717 (10th Cir. 2006)).  The Tenth Circuit has recognized that a conviction merely for "simple possession" of a controlled substance that does "not contain an element of intent to manufacture, import, export, or distribute" does not qualify as a controlled substance offense within the definition of this guideline.  See United States v. Galloway, 937 F.2d 542, 549 (10th Cir. 1991).

Because the Tenth Circuit has squarely addressed the issue, merely possessing methamphetamine does not qualify as a controlled substance offense within the definition of U.S.S.G. § 4B1.4.  Thus, merely because Hammons possessed methamphetamine does not make his crime a controlled substance offense.  See United States v. Galloway, 937 F.2d at 549.  The Court recognizes that the United States could likely satisfy the in connection requirement contained in U.S.S.G. § 4B1.4, as the Court discussed in its analysis of an enhancement under U.S.S.G. § 2K2.1(b)(6).  The available evidence regarding Hammons' conduct, however, does not indicate that he intended to engage in behavior that would make his possession of methamphetamine a controlled substance offense, such as manufacturing, importing, exporting, or distributing the substance.  See United States v. Galloway, 937 F.2d at 549.  There is no evidence regarding the quantity of the drugs in his possession that would indicate he intended to manufacture, import, export, or distribute methamphetamine.[12]  While it is possible that Hammons was selling or giving drugs to the woman

---

[12]Hammons cites to a United States Forest Service report in his Sentencing Memorandum that the United States produced during discovery which indicates that the officer found approximately two grams of methamphetamine.  See Sentencing Memorandum at 5.  No one has provided a copy of this report to the Court.  The PSR states: "The weight of the methamphetamine seized was not available."  PSR ¶ 11, at 4.

in the vehicle with him, she may have just been using drugs with him or may have just been holding the zip lock bag containing the drugs. She may not have been using drugs at all. There is little evidence that the USPO or the United States have presented that clarifies her role, other than that she was holding a zip lock bag containing some drugs. In the context of controlled substance offenses, Congress has defined the term "distribute" as "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11). The same statute defines the term "deliver" as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Furthermore, the Tenth Circuit has emphasized that the intent to distribute drugs is a separate element than the distribution of drugs. See United States v. Jacobs, 579 F.3d 1198, 1200 (10th Cir. 2009).

It is true that Hammons stated he owned the drugs in the vehicle. That statement, however, does not necessarily eliminate the possibility that the drugs in the zip lock bag were the woman's drugs, as he may have had some motivation to take the blame for her. Given that Hammons admitted ownership of them, it is more probable that they were his drugs. Whether he intended to distribute drugs to her, however, is a separate issue. The lack of information regarding the amount of methamphetamine in the vehicle, the absence of evidence indicating that there was any significant amount of money in the vehicle, and that Hammons was proceeding to inject himself with methamphetamine do not support a finding that he possessed with intent to distribute methamphetamine. Many of the facts surrounding this potential offense are ambiguous and undeveloped. It is not clear how the woman came into possession of the bag. The facts do not state whether Hammons handed the woman in the vehicle the bag. It is possible the bag was somewhere in the vehicle and she picked it up. She may have just been holding the zip lock bag briefly while

Hammons was taking drugs himself, which stretches the definition of the term distribute.  There are not many facts available regarding Hammons' intent, as he may have never intended to distribute any drugs to the woman within the definition of that term.  The United States has the burden to support a sentencing enhancement.  See United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence standard applies during sentencing).  While it is possible Hammons was distributing methamphetamine or some other substance, the United States has not carried its burden to prove he was doing so by a preponderance of the evidence.

A somewhat more complex issue is, in terms of the application of U.S.S.G. § 4B1.4, what role some of Hammons' other conduct plays, specifically his holding as collateral a firearm for another individual so that the individual could purchase methamphetamine or his receiving the firearm in exchange for selling methamphetamine.  In a case factually similar to the present circumstances, the Tenth Circuit addressed a situation where a defendant "made a specific agreement with [an] undercover officer to sell" a firearm "to raise funds in order to buy drugs, which he would then turn around and sell to the undercover officer," and where the defendant "met the undercover officer and sold him the firearm."  United States v. Taylor, 413 F.3d at 1155.  The Tenth Circuit upheld the district court's conclusion that this conduct constituted a controlled substance offense that was in connection with the use or possession of a firearm.  See United States v. Taylor, 413 F.3d at 1155.  United States v. Taylor involves some key differences from the current case, however.  Hammons gave two conflicting stories as to how he obtained the firearm.  He first told an officer that he obtained the firearm by loaning it as collateral so that the lender could purchase methamphetamine.  He later told Bureau of Alcohol, Tobacco, and Firearms agents that "he sold methamphetamine" to a person "and received a firearm in lieu of $150.00."  PSR ¶¶ 12-13, at 5.

Both of those events occurred at an unspecified time before the current offense. In United States v. Taylor, in comparison, the crime at issue arose out of a defendant "ma[king] a specific agreement with [an] undercover officer to sell" a firearm "to raise funds in order to buy drugs, which he would then turn around and sell to the undercover officer," and the defendant then "me[e]t[ing] the undercover officer and [selling] him the firearm." United States v. Taylor, 413 F.3d at 1155. In this case, the event involving the drug transaction is largely unrelated to the events that occurred when Hammons was arrested, using methamphetamine in his vehicle. The only connection is that the same firearm was involved in both incidents and both incidents involved methamphetamine. There is no information regarding how much time separated the two events in this case.[13]

The key question is whether Hammons "used or possessed the firearm or ammunition in connection with . . . a controlled substance offense." U.S.S.G. § 4B1.4(b)(3)(A) (emphasis added). In interpreting the language "in connection with" in this guideline, the Tenth Circuit has held that, "'if the weapon's possession is coincidental or entirely unrelated to the offense,' it is not possessed 'in connection with' another offense." United States v. Taylor, 413 F.3d at 1154 (quoting United States v. Gomez-Arrellano, 5 F.3d at 466-67). The Tenth Circuit has also recognized "that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under [the 'in connection with' language] is appropriate." United States v. Taylor, 413 F.3d at 1154 (alteration in original)(quoting United States v. Bunner, 134 F.3d at 1006). The problem for the United States is that the underlying felony is that Hammons possessed a firearm while he was a felon, and there is no indication he was engaging in methamphetamine distribution. The evidence

_____

[13]Hammons stated that two to six weeks passed between the events in his Sentencing Memorandum, but did not cite to any portion of the record to support that contention. See Sentencing Memorandum at 5-6. The United States and USPO provide no indication of when that event occurred.

supports only a finding that he was in possession of methamphetamine, which is not a controlled substance offense.  See United States v. Galloway, 937 F.2d at 549.

While the prior drug transaction where Hammons obtained the firearm would qualify as a controlled substance offense, because Hammons was distributing methamphetamine, that conduct does not qualify as relevant conduct for purposes of the present issue.  See United States v. Gambino-Zavala, 539 F.3d at 1230 n.3 (recognizing that relevant conduct imposes limits on the application of an enhancement under a similar guideline -- U.S.S.G. § 2K2.1(b)(6))  Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, induced, procured, or willfully caused by the defendant" if they "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  U.S.S.G. § 1B1.3(a)(1).  There is no evidence suggesting that this prior drug transaction occurred during the commission of the offense of conviction.  Because the offense of being a felon in possession of a firearm is a strict liability offense, see 18 U.S.C. § 922(g)(1), it is difficult to see how he engaged in this drug transaction to prepare for this offense when the offense has no required culpable mental state other than that the defendant knowingly possess the firearm, see United States v. Sistrunk, 622 F.3d 1328, (11th Cir. 2010)("The offense of being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), is a strict liability offense[,] . . . [as] the government need only prove that the defendant consciously possessed what he knew to be a gun."); United States v. Mahan, 232 F.App'x 796, 799 (10th Cir. 2007)(unpublished)(discussing felon in possession of a firearm as a "strict liability crime").  Furthermore, there is no information regarding the timing of that drug transaction in relation to the current offense.  The situation might be different if Hammons had engaged in this drug transaction to acquire a firearm so that he could, for example, rob a bank.  Lastly, there is no evidence that

Hammons engaged in this drug transaction while seeking to avoid detection for a crime under 18 U.S.C. § 922(g)(1).

In support of its argument that the Court should consider this conduct, the United States cites to United States v. Windle, 74 F.3d 997 (10th Cir. 1997). That case addresses whether several different offenses "are sufficiently related to be considered part of the same course of conduct." United States v. Windle, 74 F.3d at 1000. Factually, United States v. Windle assessed whether a court could consider several different firearms that the defendant possessed over a period of months as part of the same course of conduct for purposes of an enhancement under the guideline regarding felon in possession of a firearm. See United States v. Windle, 74 F.3d at 999-1000. In assessing whether the different conduct qualified as relevant conduct, the Tenth Circuit looked to the three factors listed in application note 9 to U.S.S.G. § 1B1.3, which the Sentencing Commission gave to determine whether offenses are part of the same course of conduct. See United States v. Windle, 74 F.3d at 1000-01. Those factors include: (i) "the degree of similarity of the offenses"; (ii) "the regularity (repetitions) of the offenses"; and (iii) "the time interval between the offenses." United States v. Windle, 74 F.3d at 1000. Applying those factors here, first, the drug transaction involving the sale of methamphetamine and the later offense of being a felon in possession of a firearm are not similar. One involves a commercial transaction involving narcotics and the other is a status offense that depends on the possession of a firearm. The crime of being a felon in possession is also largely a strict liability offense. Second, there were only two separate transactions at issue, so there is not a significant degree of regularity. Third, there is no evidence regarding the time interval between the offenses. The United States has the burden to support a sentencing enhancement. See United States v. Manatau, 647 F.3d at 1054 n.2 (noting that the preponderance-of-the-evidence standard applies during sentencing). It has failed to carry that burden. Consequently, the offense

-39-

level of 34 under U.S.S.G. § 4B1.4(b)(3)(A) does not apply.

        U.S.S.G. § 4B1.4 provides in relevant part:

(a)      A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.

(b)      The offense level for an armed career criminal is the greatest of:

        (1)      the offense level applicable from Chapters Two and Three; or

        (2)      the offense level from § 4B1.1 (Career Offender) if applicable; or

        (3)(A)  34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

        (B)     33, otherwise.

U.S.S.G. § 4B1.4. It is necessary for the Court to determine the greatest of these offense levels. The applicable offense level from Chapter Two of the sentencing guidelines appears in U.S.S.G. § 2K2.1(a)(2) and is an offense level of 24, as no further enhancements apply. See U.S.S.G. § 2K2.1; PSR ¶ 22, at 6. That offense level is lower than 33. The offense level from U.S.S.G. § 4B1.1 does not apply, because the "instant offense of conviction" of felon in possession of a firearm is not "a felony that is either a crime of violence or a controlled substance offense" as U.S.S.G. § 4B1.2 defines those terms. See U.S.S.G. § 4B1.1(a). None of the provisions in U.S.S.G. § 4B1.4(3)(A) apply. Consequently, an offense level of 33 under U.S.S.G. § 4B1.4(3)(B) applies rather than an offense level of 34 which the USPO applied.

## V.    THE COURT OVERRULES HAMMONS' OBJECTIONS TO HIS CRIMINAL-HISTORY-POINT CALCULATION AS MOOT.

        Originally, Hammons objected to the calculation of his criminal history points on two grounds. First, he argues that the convictions listed in paragraphs 38 and 39 of the PSR should count

as a single sentence, which would make these offenses result in 3 criminal history points as opposed to 4 criminal history points.  See Sentencing Memorandum at 7-8.  Second, he contends that, under U.S.S.G. § 4A1.1(b), his sentence of imprisonment for the convictions listed in paragraphs 38 and 39 of the PSR was only 364 days rather than "one year and one month," which means that he should receive only 2 criminal history points as opposed to 3 for these offenses.  Sentencing Memorandum at 8.  Thus, he argues that his "total number of points should be 7, which establishes a Criminal History Category of IV."  Sentencing Memorandum at 8.

After viewing the USPO's response to this first objection in its Second Addendum to the PSR, see Second Addendum to PSR at 2-3, Hammons withdrew this first objection at the hearing conducted on November 21, 2011.  See Tr. at 8:6-15 (Fisher).  The USPO agreed with Hammons' second objection and corrected his criminal history calculation to reflect his objection.  See Addendum to PSR at 3.  The United States agreed to this modification at the hearing.  See Tr. at 8:22-25 (Court, Walsh).  Because the parties and the USPO have resolved these matters, and the Court sees no error in the manner in which they resolved these issues, the Court overrules Hammons' objections as moot.  The correct amount of criminal history points Hammons has is 7, which yields a criminal history category of IV.

## VI.   BECAUSE THE PSR INCORRECTLY APPLIED A CRIMINAL HISTORY CATEGORY OF VI PURSUANT TO THE CAREER CRIMINAL PROVISIONS IN U.S.S.G § 4B1.4, THE COURT WILL APPLY THE CORRECT CRIMINAL HISTORY CATEGORY OF IV.

Hammons also objects to the PSR's application of a criminal history category of VI under U.S.S.G. § 4B1.4(c)(2) based on "the presumption of the use or possession of the firearm in connection with a crime of violence as defined in § 4B1.2(a) or a controlled substance offense as defined in 4B1.2(b)."  Sentencing Memorandum at 8.  He argues that he did not use or possess the

-41-

firearm in connection with a crime of violence, as the "unlawful possession of a firearm by a felon" is not a crime of violence.  <u>See</u> Sentencing Memorandum at 8.  He also contends that he did not possess the firearm in connection with a "controlled substance offense" within the meaning of that term.  Sentencing Memorandum at 8.

U.S.S.G. § 4B1.4(c) provides:

(c)      The criminal history category for an armed career criminal is the greatest of:

     (1)     the criminal history category from Chapter Four, Part A (Criminal History), or § 4B1.1 (Career Offender) if applicable; or

     (2)     Category VI, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

     (3)     Category IV.

U.S.S.G. § 4B1.4(c).  The Court has already addressed whether Hammons used or possessed a firearm in connection with either a crime of violence or a controlled substance offense in its discussion of the proper calculation of his offense level under U.S.S.G. § 4B1.4(b).  That provision mirrors the definition of crime of violence and controlled substance offense contained in U.S.S.G. § 4B1.4(c), as each subsection refers to U.S.S.G. § 4B1.2 for the definitions of these terms.[14]  <u>See</u>

_____

[14]U.S.S.G. § 4B1.4 provides in relevant part:

(a)     A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.

(b)     The offense level for an armed career criminal is the greatest of:

     (1)     the offense level applicable from Chapters Two and Three; or

     (2)     the offense level from § 4B1.1 (Career Offender) if applicable; or

U.S.S.G. § 4B1.4(b)-(c).  The Tenth Circuit "interpret[s] the Sentencing Guidelines according to accepted rules of statutory construction."  United States v. Nacchio, 573 F.3d 1062, 1066 (10th Cir. 2009).  Courts generally presume that a drafter of a statute intends identical language in different sections within a statute to have the same meaning.  See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85–86 (2006).  Consequently, the Court interprets this provision in the identical manner it interpreted U.S.S.G. § 4B1.4(b).  Thus, for purposes of U.S.S.G. § 4B1.4(c), Hammons did not use or possess a firearm in connection with either a crime of violence or a controlled substance offense.  See U.S.S.G. § 4B1.4(c).

It is now necessary to calculate the proper criminal history category under U.S.S.G. § 4B1.4(c).  Hammons default criminal history category is IV based on his 7 criminal history points. The criminal history category from U.S.S.G. § 4B1.1 does not apply, which imposes a criminal history category of VI.  See U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.").  That criminal history category under U.S.S.G. § 4B1.1 does not apply, because the "instant offense of conviction" of felon in possession of a firearm is not "a felony that is either a crime of violence or a controlled substance offense" as U.S.S.G. § 4B1.2 defines those terms.  See U.S.S.G. § 4B1.1(a).  A criminal history category of VI does not apply under U.S.S.G. § 4B1.4(c)(2), because Hammons did not use or possess a firearm

---

(3)(A)   34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

(B)       33, otherwise.

U.S.S.G. § 4B1.4.

in connection with either a crime of violence or a controlled substance offense.   U.S.S.G. § 4B1.4(c)(3) applies a criminal history category of IV.   Thus, the highest criminal history category under U.S.S.G. § 4B1.4(c) is a criminal history category of IV.   Hammons offense level would be 30 after a 3-level reduction for acceptance of responsibility.   An offense level of 30 and a criminal history category of IV yields a guideline imprisonment range of 135 to 168 months.   Pursuant to the fifteen-year statutory minimum under the ACCA, Hammons guideline imprisonment figure is 180 months.   See  18 U.S.C. § 924(e)(1).

**IT IS ORDERED** that the objections in the Defendant's: (i) Second Supplemental Objection, filed November 13, 2011 (Doc. 91); and (ii) Amended Sentencing Memorandum, filed November 29, 2011 (Doc. 97), are sustained in part and overruled in part.   To the extent Defendant Robert L. Hammons seeks reconsideration of the Court's prior Memorandum Opinion and Order, filed October 6, 2010 (Doc. 73), the Court will not make any changes to its MOO.   The Court declines to adopt Hammons constitutional vagueness challenge.   The Court concludes that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) is appropriate.   The Court will apply an offense level of 33 rather than 34 under the armed career criminal provisions of U.S.S.G. § 4B1.4.   The Court overrules as moot Hammons' objections regarding his criminal-history-point calculation.   The Court will apply a criminal history category of IV rather than a criminal history category of VI under the armed career criminal provisions of U.S.S.G. § 4B1.4.   Pursuant to the fifteen-year statutory minimum under the ACCA, Hammons guideline imprisonment figure is 180 months.

UNITED STATES DISTRICT JUDGE

-44-

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
David M. Walsh
Paige Messec
  Assistant United States Attorneys
Albuquerque,  New Mexico

      *Attorneys for the Plaintiff*

Charles Nicholas Fisher
Allison & Fisher
Albuquerque, New Mexico

      *Attorneys for the Defendant*