# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

         Plaintiff/Respondent,         No.    16-cv-00499-JB-KRS
                                                      07-cr-1164-JB

v.

ROBERT L. HAMMONS,

         Defendant/Movant.

## AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Robert L. Hammons, presently incarcerated at FCI Springfield, seeks review of his sentence under 28 U.SC. § 2255 in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct 2551 (2015). In his motion to vacate [Doc. 114], Hammons contends that three previous convictions—two for first-degree robbery in Oregon, *see* Or. Rev. Stat. § 164.415, and one for aggravated assault against a household member, *see* N.M. Stat. Ann. 30-3-13—no longer qualify as violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), the basis for his 180-month sentence. The Government has filed a response in opposition [Doc. 128], and Hammons a reply [Doc. 131]. Hammons also submitted objections [Doc. 137] to earlier recommendations from this Court's predecessor [Doc. 136]. Acting under its inherent authority to reconsider previous rulings and an order of reference from United States District Court Judge James O. Browning, *see* 28 U.S.C. § 636(b), the Court has considered the parties' submissions and now recommends Hammons' motion be granted and he be resentenced.

# I.   BACKGROUND

## A.   <u>Facts Underlying Conviction</u>

On June 13, 2007, a federal grand jury returned a two-count indictment charging Hammons with possessing a firearm as a felon, contrary to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I) and possessing a stolen firearm in violation of Sections 922(j) and 924(a)(2) (Count II). [Doc. 2]. The charging document listed three prior felonies as the basis for Count I, including first-degree robbery in Oregon, and false imprisonment and aggravated assault against a household member in New Mexico. [Doc. 2, pp. 1-2].  On October 30, 2008, Hammons pleaded guilty to Count I of the indictment and executed a formal plea agreement. [Doc. 33]. United States Magistrate Judge Robert Hayes Scott accepted the plea, and the matter was set for sentencing. [Doc. 34].

The factual basis for Hammons' commission of the offense is set forth in the plea agreement.   [Doc. 33, ¶9]. Hammons admitted that in February of 2007, he "knowingly possessed a Smith & Wesson .22 caliber pistol . . . and approximately seven (7) rounds of Federal brand .22 Long Rifle (LR) caliber cartridge ammunition." [Doc. 33, ¶9(b)].  In exchange for pleading guilty, the Government promised not to charge additional crimes arising from the same conduct and to move to dismiss Count II of the indictment.  [Doc. 33, ¶12(a)-(b)].  The Government did not recommend any specific sentence and advised Hammons that he "may be an armed career criminal which carries a minimum sentence of fifteen (15) years imprisonment." [Doc. 33, ¶ 4(a); 6(a)].

On April 21, 2009, the Government filed a "Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G

§4B1.4." [Doc. 38]. As the basis, the Government identified five previous felonies for which Hammons had been convicted: (1) a September 30, 2000 conviction in New Mexico's Second Judicial District for false imprisonment; (2) an October 1, 2000 conviction for the same offense in the same court; (3) an August 13, 2000 conviction for aggravated assault against a household member with a deadly weapon in the Second Judicial District; (4) a December 18, 1981 conviction for robbery in the Umatilla County, Oregon Circuit Court; and (5) an October 30, 1978 conviction for the same offense in the Linn County, Oregon Circuit Court. [Doc. 38, pp. 1-2]. The United States Probation Office prepared a Presentence Report ("PSR") in advance of sentencing.

After sentencing was continued on several occasions, Hammons moved to withdraw his guilty plea. [Doc. 50]. He also sought appointment of a new attorney. [Doc. 75] The Government contested the motion, accusing Hammons of "gaming the system." [Doc. 53]. The Government asserted that Hammons lacked a sufficient reason to back out of the agreement and could not prove his innocence as a justification for doing so. [Doc. 53, pp. 3-5]. After a hearing, Judge Browning issued an opinion granting Hammons' request for a new attorney, but denying without prejudice his motion to withdraw his guilty plea so that Hammons could discuss it with his new attorney. [Doc. 80]. Hammons later abandoned the motion to withdraw his plea.

Hammons also lodged objections to the Government's pursuit of the ACCA enhancement. [Doc. 47]. Among other things, Hammons disagreed that his two convictions for false imprisonment qualified as violent felonies that would subject him to a 180-month minimum sentence. [Doc. 47, pp. 2-5]. The Government responded to the objection. [Doc. 57]. The Government maintained that even if those offenses did not satisfy the ACCA's "force" clause, they undoubtedly met the ACCA's "residual clause."[Doc. 57, pp. 1-3]. In a supplemental paper,

Hammons asked the Court to apply the Supreme Court's then recent decision, *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson 2010*"), to disqualify his convictions for false imprisonment and aggravated assault against a household member as ACCA predicates. [Doc. 70]. Under *Johnson 2010*, Hammons asserted, these offenses, categorically, did not include the type of violent force necessary to warrant a sentencing enhancement. [Doc. 70, pp. 1-2]. The Government disagreed, insisting that aggravated assault with a deadly weapon easily satisfied *Johnson 2010* and false imprisonment fell squarely within the ACCA's residual clause. [Doc. 71, 1-5].

Judge Browning ultimately agreed with the Government. [Doc. 73]. In a memorandum opinion and order, he first noted that "Hammons does not dispute that two of his previous convictions – for the Oregon offenses of . . . robbery in the first degree [] and kidnapping in the third degree – qualify as predicate offenses for the purposes of the ACCA enhancement." [Doc, 73, p. 31]. In terms of the other convictions, Judge Browning concluded that "New Mexico's crime of aggravated assault against a household member with a deadly weapon is a violent felony under the force clause" and "New Mexico's crime of false imprisonment is a violent felony under the residual clause of the ACCA." [Doc. 73, p. 31]. Consequently, Hammons had three qualifying felonies under the ACCA, and Judge Browning overruled Hammons objections to the use of his past convictions for the 180-month enhancement. [Doc. 73, pp. 31-46].

Following this decision, Hammons filed sentencing memoranda in which he presented mitigating arguments in favor of a lesser sentence and questioned the Probation Office's computations and sentencing recommendations in the PSR. [Doc. 90, pp. 1-14; Doc. 98, pp. 1-14]. Hammons also submitted a "second supplemental objection" to the proposed ACCA enhancement seeking "to preserve a constitutional challenge to [the residual] clause of [the]

ACCA" [Doc. 91, p. 2].   Under what he called the Supreme Court's significant limitation on a reach of the residual clause, *see Begay v. United States*, 553 U.S. 137 (2008), Hammons argued that his convictions for false imprisonment are not "roughly similar" to the enumerated crimes listed in the ACCA; nor did they entail they type of "purposeful, violent, and aggressive conduct" the ACCA requires. [Doc. 91, p. 5-7 (citations omitted)]. As if to foreshadow 2015's change of law, Hammons also asserted that the ACCA's residual clause was unconstitutionally vague.  [Doc. 91, pp. 7-13].

The Government dismissed Hammons' contentions. It argued both that the guidelines' calculation in the PSR was correct and that the ACCA's residual clause was constitutional. [Docs 92 & 93]. The Government urged Judge Browning to adhere to his initial determination that Hammons' convictions constitute violent felonies and side with the then majority of the Supreme Court that had rejected the same vagueness challenge Hammons raised. [Docs. 92 & 93]. In a written order, Judge Browning agreed that the residual clause withstood constitutional scrutiny and found no basis to reconsider his prior decision. [Doc. 98, pp. 5, 21]. On February 12, 2012, Judge Browning sentenced Hammons to 180 months' incarceration, three years supervised released, and participation in a mental health and substance abuse program, among other terms. [Doc. 101].  Although the Court was unwilling to declare the residual clause unconstitutional, the Court nonetheless granted the Government's motion to dismiss the second count of the indictment and Hammons' request to be placed at FCI Springfield in Illinois in light of his significant health problems. [Docs. 101; 104].

## B.  Procedural Facts

On June 24, 2016, Hammons filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  [Doc. 114].   Judge Browning appointed Hammons

counsel and subsequently referred the matter to this Court's predecessor, United States Magistrate Judge Lourdes Martinez, to recommend a disposition. [Doc. 112; 117]. Hammons asserted that his previous convictions for false imprisonment under New Mexico law are not valid predicates under the ACCA, especially after *Johnson 2015*'s abolishment of the "residual clause." He also urged the Court to disqualify his conviction for aggravated assault against a household member as irreconcilable with *Johnson 2010*'s violent-force mandate. [Doc. 114, pp. 8-15].

The Government submitted a response in opposition on November 28, 2016. [Doc. 128]. Although the Government agreed that false imprisonment could no longer support an ACCA enhancement after *Johnson 2015*, it maintained that aggravated assault against a household member remained a violent felony under the ACCA's force clause, especially in light of *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016)'s holding that aggravated assault in New Mexico is a "crime of violence" under the federal sentencing guidelines. [Doc. 128, pp. 4-5]. The Government also asserted that Hammons' Oregon convictions for first-degree robbery qualify as violent felonies, and notwithstanding *Johnson 2015*, Hammons remained "an armed career criminal." [Doc. 128, pp. 2-3].

In a separate filing, the Probation Office insisted *Johnson 2015* does not change Hammons' sentence because regardless of the constitutionality of the residual clause, Hammons' convictions for robbery and assault against a household member constitute the three violent felonies the ACCA requires. [CV Doc. 14]. On January 27, 2017, Hammons' submitted a reply in support of his motion. [Doc. 131]. Aside from reiterating his previous arguments, Hammons asserted that his robbery convictions from Oregon do not pass *Johnson 2010*'s violent-force test and therefore may not support an enhanced sentence. [Doc. 131, pp. 1-10].

On April 25, 2017, Judge Martinez filed a report recommending that Hammons' motion be denied and his sentence be affirmed. [Doc. 136, p. 2]. Notwithstanding *Johnson 2015* and the parties' agreement that false imprisonment under New Mexico law no longer is a violent felony, Judge Martinez determined Hammons' remaining three convictions met the ACCA's "force clause," and properly were used to impose a 15-year term of incarceration. [Doc. 126, pp. 6-11]. First-degree robbery under Oregon law, Judge Martinez explained, requires violent force—"the additional factor of actual or threatened violence . . . transforms the conduct from theft, which requires only the intent to deprive, into a substantially different crime, robbery." [Doc. 136, p. 7 (citation omitted)]. Judge Martinez also concluded that the Tenth Circuit's holding in *United States v. Silva*, 608 F.3d 663 (10th Cir. 2010) that aggravated assault in New Mexico is a "crime of violence" disposed of Hammons' contentions as to aggravated assault against a household member. [Doc. 136 p. 9]. Hammons timely objected to the PFRD. [Doc. 137]. The Government did not respond.

## II. APPLICABLE LAW

The ACCA addresses the "special danger" that career offenders carrying guns present, *Begay*, 553 U.S. at 146, by imposing a minimum 15-year sentence for felons in possession of firearms with three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(2)(B). A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against [another] person," "is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The Court enhanced Hammons' sentence under the ACCA because he was twice convicted of false imprisonment under New Mexico law, *see* N.M. Stat. Ann. § 30-4-

3; twice for first-degree robbery contrary to Oregon law, *see* Or. Rev. Stat. § 164.415; and once for aggravated assault against a household member in violation of New Mexico law, *see* N.M. Stat. Ann § 30-3-13.

Four years after Hammons' sentencing, the Supreme Court held the ACCA's "residual clause"—the one that requires a 15-year minimum sentence for crimes "otherwise involving conduct that presents a serious risk of physical injury"—unconstitutionally vague, but, as relevant here, left intact the "force clause" for offenses having "as an element the use, attempted use, or threatened use of physical force against the person of another." *Johnson 2015*, 135 S. Ct. at 2256 (citation omitted). *Johnson 2015*'s holding is retroactive, *see Welch v. United States*, __ U.S. __, __, 136 S. Ct. 1257, 1268 (2016), and Hammons asserts that none of the previous convictions upon which the Court based his enhanced sentence survive *Johnson 2015*'s mandate. He is partially correct, and the Court recommends he be resentenced.

### III. ANALYSIS

As an initial matter, the parties agree that *Johnson 2015* does not apply to Hammons' challenge under the "residual clause" of the sentencing guidelines. The Court agrees that *Beckles v. United States*, __ U.S. __, __, 137 S. Ct. 886, 894 (2017) forecloses this argument because unlike the ACCA, "the Guidelines are not subject to a vagueness challenge under the Due Process Clause" and by extension "[t]he residual clause in §4B1.2(a)(2) . . . is not void for vagueness." The Court will therefore consider only Hammons' statutory attack.

Additionally, the Government concedes that Hammons' convictions for false imprisonment under New Mexico law no longer may be used to enhance his sentence under the ACCA. The Government is correct. Judge Browning determined that false imprisonment constituted a qualifying predicate pursuant to the ACCA's now unconstitutional residual clause.

*See United States v. Hammons*, 2010 U.S. Dist. LEXIS 113022, *78-79 (D.N.M. Oct. 6, 2010).

Thus, the Court must disregard these two crimes and determine whether Hammons' conviction for aggravated assault against a household member in New Mexico and two separate convictions for first-degree robbery in Oregon constitute three violent felonies under the ACCA's force clause.

## A.  Application of the Force Clause.

Whether a prior conviction meets the ACCA's definition of a violent felony turns on application of the so-called "categorical approach," whereby the Court examines the elements of the predicate offense without regard to the underlying facts and determines whether it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Harris*, 844 F.3d at 1264 (citing 18 U.S.C. § 924(e)(2)(B)(i)); *Descamps v. United States*, __ U.S. __, __, 133 S. Ct. 2276, 2283 (2013)).  Federal law supplies the analysis for the ACCA's force clause; state law defines the substantive elements of the crime. *See Johnson 2010*, 559 U.S. at 138.

In *Johnson 2010*, the Supreme Court examined Florida's simple battery statute and concluded that battery did not require the type of violent and physical force necessary to constitute an ACCA qualifying conviction. *See id.* at 140.  The Court reasoned that "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Id.* (citation omitted).  Battery under Florida law, however, encompassed "any physical contact no matter how slight" including "[t]he most nominal contact, such as a tap on the shoulder without consent[.]" *Id.* at 138 (internal citations and alterations omitted).  As a result, the Court held that simple battery, as well as crimes that paralleled common law battery's requirement of mere offensive touching, do not satisfy the ACCA's force clause.  *See id.*

To determine whether Hammons' convictions for aggravated assault against a household member under New Mexico law and first-degree robbery under Oregon law satisfy *Johnson 2010*, the Court must examine the elements of these offenses and consider whether they involve "violent force. . . capable of causing physical pain or injury." *Id.* Hammons' conviction for aggravated assault against a household member meets the definition of "violent felony." Hammons' convictions for first-degree robbery do not. Because only one of the five violent felonies relied upon by the Government and the Court in order to enhance Hammons under the ACCA survives scrutiny pursuant to *Johnson 2010,* the Court concludes Hammond's should be resentenced.

### 1. *Aggravated assault against a household member.*

The Court concludes that aggravated assault against a household member under Section 30-3-13 of the New Mexico Statutes is a violent felony as defined by the ACCA. As Hammons acknowledges, the case law does not support his contrary argument. *See United States v. Silva*, 608 F.3d 663, 670-671 (10th Cir. 2010). In *Silva*, the Tenth Circuit determined that a closely related offense, aggravated assault, *see* N.M. Stat. Ann. § 30-3-2, satisfied *Johnson 2010*. As the court explained, aggravated assault "threatens the use of 'violent force' because by committing such an act [threatening or engaging in menacing conduct], the aggressor communicates to his victim that he will potentially use violent force against the victim in the near future." *Id.* Moreover, aggravated assault that places the victim in immediate apprehension of a battery "threatens the use of 'violent force' because the proscribed conduct always has the potential to lead to 'violent force.'" *Id.*

For ACCA purposes, there is no meaningful distinction between aggravated assault and aggravated assault against a household member under New Mexico law. *Compare* N.M. Stat.

Ann. § 30-3-2 ("Aggravated assault consists of either: A. unlawfully assaulting or striking at another with a deadly weapon; B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or C. willfully and intentionally assaulting another with intent to commit any felony") *with* N.M. Stat. Ann. 30-3-13 ("Aggravated assault against a household member consists of: (1) unlawfully assaulting or striking at a household member with a deadly weapon; (2) willfully and intentionally assaulting a household member with intent to commit any felony."). The difference between the two statutes—aggravated assault having "another [person]" as the victim and aggravated assault against a household member having a "household member" as the victim—does not alter the force element necessary to sustain a conviction for either crime.

The Tenth Circuit reached the same conclusion when assessing assault with a deadly weapon against the term "crime of violence" as used under the career-offender provisions of the guidelines. *See Maldonado-Palma*, 839 F.3d at 1250 (explain that "the perpetrator of an aggravated assault with a deadly weapon must employ the deadly weapon in committing the assault" and therefore aggravated assault under N.M. Stat. Ann. § 30-3-2(A) is categorically a crime of violence"). As *Silva* explains, cases interpreting "crime of violence" under the guidelines may be used "in determining whether a conviction qualifies as a violent felony" under the ACCA. 608 F.3d at 671. Consistent with *Silva* and *Maldonado-Palma*, the Court determines that the crime of aggravated assault against a household member includes the use or threatened use of violent force and was properly used to enhance Hammons' sentence under the ACCA.

## 2. *Robbery under Oregon law.*

First-degree robbery under Oregon law consists of committing the third degree of that offense together with: (1) being "armed with a deadly weapon"; (2) using or attempting "to use a dangerous weapon"; or (3) causing or attempting "to cause serious injury to any person." Or. Rev. Stat. § 164.415(1)(a)-(c). A criminal defendant commits third-degree robbery where "in the course of committing or attempting to commit theft or unauthorized use of a vehicle . . . the [defendant] uses or threatens the immediate use of physical force" against someone else "with the intent of: (a) [p]reventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or (b) [c]ompelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle." Or. Rev. Stat. § 164.395.

The Court's analysis therefore unfolds in two steps. First, employing the categorical approach, the Court must decide whether third-degree robbery satisfies *Johnson 2010*'s violent-force requirement. Second, the Court must determine what difference, if any, the addition of the aggravating factors constituting first-degree robbery makes to the outcome.

### a. Third-Degree robbery under Oregon law.

Hammons contends that third-degree robbery under Oregon law, categorically, does not entail the type violent, physical force sufficient to meet *Johnson 2010*. The Court agrees.

At least one court has reached that result. *See United States v. Dunlap*, 162 F. Supp. 3d 1106, 1113-1115 (D. Or. 2016). In *Dunlap*, the defendant asserted his conviction for third-degree robbery under Oregon law did not qualify as an ACCA predicate. The district court agreed. In reaching that conclusion, the district court first reasoned that "courts must presume that a defendant's conviction rests on the least of the acts criminalized, although that analysis is

not an invitation to apply legal imagination to the state offense." *Id.* at 1113 (citing *Moncrieffe v. Holder*,__U.S.__, 133 S.Ct. 1678, 1684-85 (2013) (internal quotation omitted)). Next, the court explained Oregon's Supreme Court distinguished third-degree robbery from simple theft as including "the additional factor of actual or threatened violence" *Id.* (citing *State v. Hamilton*, 233 P.3d 432 (2010)).

Despite this distinguishing feature, the court noted that "the simple fact that ORS 164.395(1) includes the use or threatened use of physical force as an element does not automatically elevate a conviction for Robbery III to the level of a violent felony under the ACCA." Instead, the court must examine Oregon's case law to determine whether only slight force is necessary to sustain a conviction for third-degree robbery. Because the Oregon courts have determined a "tug" is sufficient for conviction, *see, e.g.*, *State v. Johnson*, 168 P.3d 312 (Or. Ct. App. 2007), the district court held "ORS 164.395(1) requires only minimal force" and is therefore "overbroad for the purposes of the ACCA." *Id.* The Ninth Circuit subsequently cited this holding with approval in concluding that armed robbery under Massachusetts law does not satisfy *Johnson 2010*. *See United States v. Parnell*, 818 F.3d 974, 981 (9th Cir. 2016).

As Judge Martinez pointed out in her PFRD, "the starting point" is the state supreme court's "express words." *Harris*, 844 F.3d at 1268-1270. In *Harris*, the Tenth Circuit dissected Colorado's robbery statute and concluded it satisfied *Johnson 2010*. In so doing, the court of appeals considered whether "the constructive-force means in Colorado's robbery statute—i.e., by threats or intimidation—require the use or threatened use of physical force." *Id.* The court answered the question in the affirmative by looking to the Colorado Supreme Court's holding that "force or fear of force is the main element of the offense of robbery" and that "the offense of robbery, whether committed by actual force, or constructive force, i.e., threats or intimidation, is

a crime involving the use of force of violence." *Id.* (citing *People v. Jenkins*, 198 Colo. 347, 599 P.2d 912, 913 (Colo. 1979)).

 *Harris* has some analytic appeal in this case. As Judge Martinez noted, the Oregon Supreme Court has made similar statements. For example, in *State v. Hamilton*, 233 P.3d 432, 436 (Or. 2010) the court explained that the Oregon legislature "adopt[ed] the view that repression of violence is the principal reason for being guilty or robbery." The state court also noted that "[i]t is the additional factor of actual or threatened violence that transforms the conduct from theft, which require only the intent to deprive, into a substantively different crime, robbery." *Id.* Thus, much like the Colorado Supreme Court in *Harris*, the Oregon Supreme Court has focused on language that closely resembles *Johnson 2010*'s definition of physical force for ACCA purposes. For this reason, Judge Martinez concluded third-degree robbery includes the type of violent force necessary to qualify as an ACCA predicate.

 The Court respectfully disagrees. *Harris* does not instruct the Court to discount a decision from the state intermediate appellate court that defines the force necessary to sustain a conviction as essentially minimal. *See State v. Johnson*, 168 P.3d at 314-15 (a tug was sufficient so long as it overcame the resistance of the victim). While *Harris* does suggest that an inconsistent decision from a lower court of appeals that predates a later on-point supreme court decision may properly be disregarded, the same inconsistency does not exist here. In fact, *Hamilton* turned on the definition of "victim" under the robbery statute, not the degree of force necessary to sustain a conviction. 233 P.3d at 436. The Oregon Supreme Court therefore did not overrule *State v. Johnson* expressly or by implication.

 The Court concludes that *Dunlap* more faithfully tracks Oregon's decisional law—that third-degree robbery does not meet *Johnson 2010*'s *violent*-force requirement because only slight

force is necessary to sustain a conviction. Although the Oregon Supreme Court's *dicta* in *Hamilton* is similar to language from the Colorado Supreme Court that the Tenth Circuit found persuasive in *Harris*, it does not compel the same result.

**b. First-degree robbery under Oregon law**.

The conclusion that third-degree robbery does not meet the ACCA's force clause does not end the analysis. The Court must decide whether the remainder of the first-degree robbery statute under Oregon Revised Code Section 164.415 changes the outcome. The Court determines that the remaining elements do not make a material difference.

In *Harris*, the Tenth Circuit explained the "gravamen of the offense of robbery is the violent nature of the taking" as settled by the Colorado Supreme Court. 844 F.3d at 1267. Consequently, "robbery by 'force' in Colorado categorically matches the definition of 'physical force' assigned by the Supreme Court in *Johnson[2010]* (namely, 'violent force—that is, force capable of causing physical pain or injury to another person')." *Id.* at 1268 (citation omitted). The Tenth Circuit further held a subset of the offense—robbery by threats or intimidation—was sufficiently violent because it did not encompass "extortionist threats" against property and instead appeared to implicate bodily harm, "a violent taking" synonymous with the common law. *Id.* at 1268-69.

*Harris*, however, drew a critical distinction between its analysis and the Ninth Circuit's decision in *Parnell*, which concluded armed robbery under Massachusetts law did not satisfy *Johnson 2010*. *See Harris*, 844 F.3d at 1269 (citing *Parnell*, 818 F.3d 974). Rather than reject the reasoning of *Parnell*, the Tenth Circuit explained *Parnell* "was careful to point out that Massachusetts had expressly departed from common law principles." *Id.* *Parnell* is instructive here because its reasoning more clearly applies to the instant case.

In *Parnell*, Massachusetts' armed-robbery statute was at issue. The law defined the offense in a similar way to Oregon as the defendant having: "(1) committed a robbery[; and] (2) while in possession of a weapon." *Id.* at 978 (citations omitted). Fatal to the *Johnson 2010* analysis, however, was that, as here, the underlying crime of robbery required no degree of force in particular so long as the force is sufficient to obtain the victim's property against his will[.]" *Id.*; *c.f. State v. Johnson*, 168 P.3d at 315 (explaining that "the jury was entitled to infer that defendant intended to use force sufficient to overcome any resistance that the victim may have offered"). More significantly, the Ninth Circuit observed that "to satisfy the second element of armed robbery, the defendant must possess a dangerous weapon during the commission of the offense, but "the weapon . . . need not be fired, employed to effectuate the robbery, used in a threatening manner, or . . . openly displayed." *Parnell*, 818 F.3d at 978 (citations omitted). Applying *Parnell*'s reasoning to this case, if Hammons need only possess, but not use, a deadly weapon to be convicted of first-degree robbery in Oregon, then that offense likewise fails *Johnson 2010*'s mandate. The lack of cases in Oregon complicates the task somewhat.

In other contexts, federal courts attempt to predict how the highest court of a state would rule on questions of state law. *See*, *e.g, Southwest Forest Industries, Inc. v. Sutton*, 868 F.2d 352, 354 (10th Cir. 1989) (examining the federal court's role in diversity cases). In making the prediction, courts look first to cases from the state supreme court, and if unavailing, the decisional law of the intermediate courts of appeals. *See Daigle v. Shell Oil Co*., 972 F.2d 1527, 1543 (10th Cir. 1992) (discussing interpretation of state law in the diversity context). The Court may also find guidance in "the policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies." *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir. 1986) (citation omitted). The ACCA appears to counsel a similar approach. *See Mathis v. United*

*States*, __U.S.__,__, 136 S. Ct. 2243, 2256-225 (2016) (courts should examine state case law and the statute itself).

The Oregon Supreme Court does not appear to have decided the issue. Two decisions from the Oregon Court of Appeals, however, suggest a defendant need only possess, not use a gun, to be convicted of first-degree robbery. *See State v. Zimmerman*, 12 P.3d 996 (Or. App. 2000); *State v. Cartright*, 595 P.2d 1289 (Or. App. 1979). In *Zimmerman*, the court considered whether second-degree robbery is a lesser-included offense of first-degree robbery. In the differentiating between the two degrees, the court explained that "[f]irst degree robbery may be committed if the individual committing the crime is armed with a deadly weapon[,]" but [t]he person committing the crime *need not actually use the deadly weapon, much less make representations about it.*" *Zimmerman*, 595 P.2d at 1290 (emphasis added).

Similarly, in *Cartright*, the Oregon Court of Appeals confronted the question of whether second-degree assault is a lesser included offense of first-degree robbery. The court concluded assault was not. In the process, the court explained "[e]ach of the possible means of committing second degree assault . . . calls for the causing of physical injury to another," but a defendant "could conceivably commit first degree robbery under either ORS 164.415(1) (a) or (b) by merely being armed with or using a dangerous weapon without actually causing physical injury." *Id.* Although these cases are not the ringing endorsement the Court would like, they do suggest that mere possession of a deadly weapon is sufficient to support a conviction for first-degree robbery under Oregon law, which *Parnell* holds fails *Johnson 2010. Parnell*, 818 F.3d at 978.

Section 164.415's plain language is consistent with this conclusion. There are three ways of committing first-degree robbery in Oregon. The second and third likely meet *Johnson 2010* because they require either "use or attempt[ted] use [of] a dangerous weapon" or "causing

or attempt[ed] caus[ing] [of] serious physical injury of another." Or. Rev. Stat. § 164.415(1)(b)-(c). The first means, however, requires only that the defendant be "armed with a deadly weapon," not that the defendant use or even threaten to use it. It does not appear the Oregon legislature has ascribed any special meaning to the term "armed" and the common dictionary definition does not require use or threatened use, merely possession—being "equipped with or carrying a firearm or firearms." *Oxforddictionaries.com*, https://en.oxforddictionaries.com/definition/armed (site last visited June 13, 2017). Thus, Oregon's first-degree robbery statute embraces conduct that does not amount to a violent felony as defined by the ACCA.

### c. Divisibility of first-degree robbery under Oregon law.

The conclusion that subsection 1(a) does not require proof of violent physical force does not necessarily condemn the *entirety* of Section 164.415, Oregon's first-degree robbery statute. If the offense is divisible, the Court may employ the "modified categorical approach" and examine available records to ascertain the specific subsection under which Hammons was convicted. *See Mathis*, 136 S. Ct. at 2253. To the extent Section 164.415 is divisible and Hammons was convicted under either subsection 1(b) or 1(c), both of which contain an element of violent-force, Hammons robbery convictions satisfy the ACCA. On the other hand, if first-degree robbery is indivisible, Hammons' two convictions do not qualify as ACCA predicates under the categorical approach applied above.

A criminal statute is divisible when it "sets out one or more elements of the offense in the alternative." *United States v. Titties*, 852 F.3d 1257, 1267 (10th Cir. 2017) (citing *Descamps*, 133 S. Ct. at 2281). A disjunctively-phrased provision, however, only qualifies as divisible if the phrases listed in the alternative are elements, not means. *Id.* "A crime is not divisible simply

because it may be accomplished through alternative means, but only when alternative elements create distinct crimes." *Id.* (citation omitted). As the Supreme Court explained "[e]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis*, 136 S. Ct. at 2248 (quotations omitted). "[T]hey are what the defendant necessarily admits when he pleads guilty." *Id.* In contradistinction, means are "various factual ways of committing some component of the offense." *Id.*

Whether "the listed items are alternative [factual] means of satisfying an element" and not "constituent parts of a crime's legal definition" turns on state law. *Titties*, 852 F.3d at 1268 (citing *Mathis*, 136 S. Ct. at 2248). Sometimes "the statute on its face will provide the answer," like where "the subsections carry different punishments" and therefore "must be elements." *Id.* Other times, the statute will provide illustrative examples of ways a crime may be committed— the quintessential definition of "means." *Id.* Finally, some statutes "identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* (citation omitted)

Case law from the jurisdiction plays a critical role. "When [a state-court ruling] exists, a sentencing judge need only follow what it says." *Id.* (citation omitted). If unanswered by either statute or precedent, the Court may examine conviction documents such as indictments and jury instructions, but only to see whether they "include[] the statute's alternative terms, [which] is as clear an indication as any that each alternative is only a possible means of commission, not an element." *Id.* (citation omitted). If none of the tools above provides guidance, the Court may not use the conviction to enhance a sentence under the ACCA. *See United States v. Huizar*, 688 F.3d 1193, 1195 (10th Cir. 2012) (stating that courts must be "certain" the prior conviction "necessarily" qualifies under the ACCA to apply the enhancement).

The first and third methods—examining the statue and looking at conviction records—do not provide a clear answer. Oregon's first-degree robbery statute contains a list of three alternatives that could either be elements or means. Facially, they appear to be different ways of committing the same crime: committing a robbery while armed with a deadly weapon, threatening or attempting to threaten with a dangerous weapon, or causing or attempting to cause serious physical injury. *See* Or. Rev. Stat. 164.415(1)(a)-(c). Whether the prosecutor would have to charge (and a jury have to agree on the specific method employed) to sustain a conviction, is unclear. Under one reading, the alternatives are more akin to aggravating factors that may require specific proof, without which only third-degree robbery exists. Yet there is no separate or different punishment depending on the subsection violated. Unfortunately, the jury instructions or indictments used in Hammons' cases from the Umatilla and Lynn County Circuit Courts are not available. The judgments of record do not reflect the particular subsection implicated his two convictions for first-degree robbery.

Looking to decisions of the Oregon courts, the third tool available to understand whether statutory alternatives are means or elements, more concretely answers the divisibility question. In *State v. Edwards*, the Oregon Court of Appeals considered whether the trial court plainly erred by failing to merge multiple counts for first-degree robbery premised on the same conduct. 281 P.3d 675, 677 (Or. Ct. App. 2012). Although different statutory alternatives (subsections a and c) were implicated, the court of appeals held "that the subparagraphs in ORS 164.415(1) define a single crime[.]" *Id.* In reaching its decision, the court explained that multiple convictions based on the same conduct would only be appropriate if "each statutory provision required proof of an element the others do not," and even that even the state "concede[d] that a single robbery

occurred . . . and that the legislature intended subsections 1(a) and 1(c) to constitute alternative theories of a single crime rather than multiple crimes." *Id.*

Because the Oregon Court of Appeals has spoken on issue, the Court is bound to follow its decision. Under Oregon law, first-degree robbery is not divisible and the Court may not employ the modified categorical approach to determine whether Hammons' convictions arose from the two subsections of the statute that appear to require the type of force *Johnson 2010* mandates. As a result, Hammons' convictions do not withstand scrutiny under the ACCA's force clause because first-degree robbery may be based on mere possession of a firearm while using minimal force to deprive a victim of personal property.

The Court recognizes that possession of a deadly weapon increases the *likelihood* of violence by orders of magnitude. Yet the ACCA's "force clause" does not deal in probabilities. Instead, the ACCA requires "violent force. . . . capable of causing physical pain or injury to another person." *Johnson 2010*, 559 U.S. at 140. To read Section 164.415(1)(a) of Oregon's first degree robbery statute as requiring violent force is not supported under either the existing case law or the plain language of the statute. It would require the Court to engraft into the analysis an exception for a predicate felony where there is "a serious potential risk of physical injury to another," which is *exactly* the language the Supreme Court determined was unconstitutional in *Johnson 2015*. Because Hammons has only one qualifying conviction under the ACCA, aggravated assault against a household member under New Mexico law, the Court concludes that Hammons should be resentenced.

## CONCLUSION

For the reasons stated above, the Court recommends that Hammons' motion pursuant to

28 U.S.C. § 2255 [CV Doc. 6; Doc. 114] be **GRANTED** and he be **RESENTENCED**.


_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE


      **WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**